1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   KATHLEEN M. WALKER, SB# 156128
2    E-Mail: Kathleen.Walker@lewisbrisbois.com
   LYNNETTE A. CHRISTOPOULOS, SB# 192123
3    E-Mail: Lynnette.Christopoulos@lewisbrisbois.com
   633 West 5th Street, Suite 4000
4  Los Angeles, California 90071
   Telephone: 213.250.1800
5  Facsimile: 213.250.7900

6  Attorneys for Defendant SELA
   HEALTHCARE, INC., dba VILLA
7  MESA CARE CENTER

8
                    UNITED STATES DISTRICT COURT
9
          CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION
10

11
   CYNTHIA  CARRILLO,  individually          Case No.
12 and  as  heir  of  DAVID  CARRILLO,
   deceased,                                 **NOTICE OF REMOVAL OF**
13          Plaintiff,                       **ACTION TO FEDERAL COURT**
                                             **PURSUANT TO 28 U.S.C. §§ 1331,**
14      vs.                                  **1332, 1441, 1442 AND 1446**

15 VILLA MESA CARE CENTER, a/k/a
   San Antonio Post Acute, and DOES 1-
16 50,

17 Defendants.

18

19

20

21

22

23     **TO THE HONORABLE COURT, PLAINTIFFS HEREIN, AND THEIR**

24 **RESPECTIVE COUNSEL OF RECORD:**

25     **PLEASE TAKE NOTICE** that Defendant SELA HEALTHCARE, INC., dba

26 VILLA MESA CARE CENTER (hereinafter "Defendant"), files this Notice of

27 Removal. This is a civil action over which this Court has original jurisdiction pursuant

28 to 28 U.S.C. §§ 1331, 1332, and 1442, and is one that may be properly removed to

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

this Court pursuant to 28 U.S.C. § 1441. Pursuant to 28 U.S.C. § 1446(a), the Defendant asserts the following grounds in support of its Notice of Removal:

## I.    PLEADINGS RELATED TO REMOVED CASE

1.    This action was initially filed on or about December 23, 2020, in the Superior Court of California, County of San Bernardino, entitled *CYNTHIA CARRILLO, individually and as heir of DAVID CARRILLO, deceased, Plaintiffs, vs. VILLA MESA CARE CENTER, a/k/a San Antonio Post Acute, and DOES 1-50, inclusive,* San Bernardino Superior Court Case No.: CIVSB2027172. Pursuant to 28 U.S.C. §1446(a), true and correct copies of all process, pleadings and orders received by Defendant in the Superior Court action are attached hereto as **Exhibit A**.

## II.   REMOVAL IS TIMELY

2.    Defendant first received a copy of the complaint on December 29, 2020. This Notice of Removal is filed within thirty (30) days of Defendant first learning of the lawsuit, therefore, the Notice is timely pursuant to 28 U.S.C. § 1446(b). *See Romulus v. CVS Pharmacy, Inc.,* 770 F.3d 67 (1st Cir. 2014), *See Chavarria v. Mgmt. & Training Corp*., No. 16-cv-617-H (RBB), 2016 U.S. Dist. LEXIS 197047, at *6 (S.D. Cal. May 13, 2016) (indicating first 30-day-time-period is triggered if the basis of removal is clear from initial pleading).

3.    Concurrent with the filing of this Notice, Defendant is serving this Notice of Removal upon Plaintiffs and filing a copy of this Notice of Removal with the Clerk of the Superior Court of the County of San Bernardino pursuant to 28 U.S.C. § 1446(d). The Certification and Notice of Interested Parties is also being submitted. True and correct copies are attached hereto as **Exhibits B and C**.

## III.  VENUE IS PROPER IN THIS COURT

4.    Removal to the United States District Court for the Central District of California is proper because the state action was filed in the Superior Court of the State of California for the County of San Bernardino, as referenced in paragraph 1,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   above. Accordingly, this Court is the appropriate venue for filing this Notice of
2   Removal pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1446(a).

3   **IV.   JURISDICTION EXISTS UNDER 28 U.S.C. § 1331 BASED ON THE**
4         **PREP ACT**

5        5.     This is a civil action over which the Court has original jurisdiction
6   under 28 U.S.C. §§ 1331 and 1442(a) and is one that may be removed to this
7   Court pursuant to 28 U.S.C. §§ 1441 and 1446 based on federal question and federal
8   officer jurisdiction.

9        6.     Plaintiffs' Complaint alleges that due to the wrongful acts and omissions
10   of Defendant, decedent, David Carrillo became infected with COVID-19 during his
11   residency at Villa Mesa Care Center and died due to the virus on April 17, 2020.
12   (**Exhibit A**, pg. 2, ¶ 3-4; pg. 3, ¶ 9, pg. 12, ¶ 66.)

13        7.     Plaintiffs allege Defendant is culpable for the way it employed CDC
14   guidelines to protect and treat decedent against infection from COVID-19, for failing
15   to take all reasonable and necessary precautions to ensure decedent did not contract
16   COVID-19 (in other words, Plaintiffs seek to hold Defendant liable for its decisions
17   directly relating to the delivery, distribution, and dispensing of countermeasures to
18   combat COVID-19), for failing to test residents for COVID-19 and for improperly
19   distributing, administering and utilizing equipment and supplies which are designated
20   countermeasures to combat the COVID-19 outbreak, including but not limited to
21   items identified as personal protective equipment. Therefore, plaintiffs' claims fall
22   under the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d
23   and 247d-6e (2006) (the "PREP Act"), the applicability of which presents a significant
24   Federal Question relating to the ongoing national emergency and COVID-19
25   pandemic. (**Exhibit A**, generally.)

26        8.     The Public Readiness and Emergency Preparedness Act, 42 U.S.C.
27   §§ 247d-6d, 247d-6e (2006) (the "PREP Act") and the Preparedness Act for Medical
28   Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020) are federal

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   statutes that apply specifically to healthcare providers such as Defendant in the

2   purchase, administration, dispensing, prescribing, distribution and use of

3   countermeasures to prevent or mitigate the spread of COVID-19.

4   　　　9.　　Because Plaintiffs alleged a claim that arises under a federal statute,

5   this Court has original jurisdiction pursuant to 28 U.S.C. § 1331; see *Parker v.*

6   *St Lawrence County Public Health Department*, 102 A.D.3d 140, 954 N. Y. S. 2d

7   259 (2012); *Eckler v. Neutrogena Corp.,* 238 Cal.App.4th 433 (2015).

8   　　　10.　　Notwithstanding 28 U.S.C. § 1331, this court is also specifically granted

9   jurisdiction by 28 U.S.C. § 247d-6d(b)(8), which states, "no State or political

10   subdivision of a State may establish, enforce, or continue in effect with respect to a

11   covered countermeasure any provision of law or legal requirement that is different

12   from, or in in conflict with, any requirement applicable under this section" and relates

13   to, among other things, use or administration of a covered countermeasure."

14   In addition, 28 U.S.C. § 247d-6d(d)(1)&(e)(1) provide for exclusive Federal

15   jurisdiction and an exclusive Federal cause of action for a suit against a covered

16   person. Complete preemption exists when (1) the statute relied upon by defendant as

17   preemptive contains civil enforcement provisions within the scope of which plaintiff's

18   state law claims fall; and (2) there is a "clear indication of Congressional intention to

19   permit removal despite the plaintiff's exclusive reliance on state law." *Railway Labor*

20   *Executives Ass'n v. Pittsburgh & Lake Erie R.R.* Co. 858 F2d 936, 942 (3rd Cir. 1988)

21   *citing Franchise Tax Bd. of State of Calif. v. Construction Laborers Vacation Trust*

22   *for Southern Calif.*, 463 U.S. 1, 24.

23   　　　11.　　Defendant's purchasing, administration, dispensing, prescribing,

24   distribution and use of countermeasures, such as facemasks and other personal

25   protective equipment and testing to prevent or mitigate the spread of COVID-19,

26   which forms the basis of this action, presents a federal question under the PREP Act

27   giving this Court original jurisdiction preempting all state law claims asserted by

28   Plaintiffs in the Complaint. 42 U.S.C. § 247d-6d.  Defendant and its staff were acting

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

as qualified persons employed for the purpose of developing and implementing policies, procedures, and other countermeasures to prevent, limit, and/or control spread of COVID-19. Defendant and its staff are also covered persons authorized to administer FDA approved COVID-19 devices, tests and medications use to treat the same.

12. The PREP Act provides liability protections for pandemic and epidemic products and security countermeasures. Specifically, this legislation empowers the Secretary of Health and Human Services (HHS) to issue a written declaration and provide that a "covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure" during a health emergency. 42 U.S.C. § 247d-6d(a)(1).

13. On March 10, 2020, United States Health and Human Services Secretary Alex M. Azar issued a Declaration invoking the PREP Act for the COVID-19 pandemic. The Declaration was effective as of February 4, 2020. (See Defendant's RFJN Exhibit 2.) In his Declaration, Secretary Azar subsequently issued an Amended Declaration under the PREP Act, which was effective as of March 27, 2020. (See Defendant's RFJN Exhibit 3.) The Amendment added respiratory protective devices approved by NIOSH (National Institute for Occupational Safety and Health) as a covered countermeasure under the PREP Act. On June 4, 2020, Secretary Azar further amended the March 10, 2020 Declaration to clarify that covered countermeasures under the Declaration include qualified products that limit the harm COVID-19 might otherwise cause. This Amendment was effective as of February 4, 2020. (See Defendant's RFJN Exhibit 4.) 85 FR 21012.[1]

---

[1] See also Families First Coronavirus Response Act, H.R. 6201, 116th Cong. § 6005 (2020).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

14.     On December 3, 2020, HHS Secretary Azar issued a Fourth Amended Declaration under the PREP Act, and made this Amended Declaration effective as of February 4, 2020. (See Defendant's RFJN Exhibit 5—December 3, 2020 Fourth Amended Declaration of Health and Human Services Secretary Azar Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19.)

15.     The Secretary's Fourth Amended Declaration provides that "***COVID-19 is an unprecedented global challenge that requires a whole-of-nation response that utilizes federal-, state-, and local-distribution channels as well as private-distribution channels. Given the broad scale of this pandemic, the Secretary amends [Section VII of] the Declaration to extend PREP Act coverage to additional private-distribution channels*** . . . ." [Emphasis added.] (See Page 12 of Defendant's RFJN-Exhibit 5.)

16.     The Fourth Amended Declaration specifically provides that Section VII of the Declaration is amended to extend liability protection under the PREP Act to Covered Persons for Recommended Activities that are related to: "Covered Countermeasures that are:

> a.   Licensed, approved, cleared or authorized by the FDA (or that are permitted to be used under an Investigational New Drug Application or an Investigational Device Exemption) under the FD&C Act or PHS Act to treat, diagnose, cure, prevent, mitigate, or limit the harm from COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom; or
>
> b.   A respiratory protective device approved by NIOSH under 42 CFR part 84, or any successor regulations, that the Secretary determines to be priority for use during a public health emergency declared under section 319 of the PHS Act to prevent, mitigate, or limit the harm from COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom." Defendant's RFJN- Exhibit 5, 85 Fed. Reg. 79194, 79196-97,

17.     Secretary Azar's Fourth Amended Declaration further makes explicit that there can be situations where *not* administering a Covered Countermeasure to a particular individual can qualify as a decision relating to the administration of a

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1441, 1442 AND 1446

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  countermeasure to an individual under the PREP Act. ***"Prioritization or purposeful***
2  ***allocation of a Covered Countermeasure, particularly if done in accordance with a***
3  ***public health authority's directive, can fall within the PREP Act and this***
4  ***Declaration's liability protections.***" Defendant's RFJN- Exhibit 5, 85 Fed. Reg.
5  79194, 79197, Amendment to Section IX of the Secretary's Declaration (emphasis
6  added).

7      18.    Secretary Azar's Fourth Amended Declaration further provides that
8  "***the Declaration must be construed in accordance with the Department of Health***
9  ***and Human Services (HHS) Office of the General Counsel (OGC) Advisory***
10  ***Opinions [of April 17, 2020 as modified on May 19, 2020 and October 22, 0220 as***
11  ***modified on October 23, 2020] on the Public Readiness and Emergency***
12  ***Preparedness Act and the Declaration ("Advisory Opinions"). The Declaration***
13  ***incorporates the Advisory Opinions for that Purpose***." Defendant's RFJN – Exhibit
14  5, 85 Fed. Reg. 79192, 79194-95 (emphasis added.) Thus, the Fourth Amended
15  Declaration incorporates all HHS Office of the General Counsel Advisory Opinions
16  related to COVID-19 and the PREP Act into the Secretary's March 10, 2020 initiating
17  Declaration. Beyond question, these Advisory Opinions must be given *Chevron*
18  controlling weight. Where Congress has expressly delegated interpretive authority to
19  an agency, that agency's interpretative proclamations are controlling on the federal
20  courts. See *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 US
21  837, 843844 (1984). Moreover, section (b)(7) of the PREP Act provides that "[n]o
22  court of the United States, or of any state, shall have subject jurisdiction to review
23  whether by mandamus or otherwise, any action by the Secretary under this
24  subsection."

25      19.    The Fourth Amended Declaration directly acknowledges the federal
26  interests in cases which require interpretation and application of the PREP Act:

27            "COVID-19 is a global challenge that requires a whole-of-nation
          response. **There are substantial federal legal and policy**
28            **issues, and substantial federal legal and policy interests**

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4827-4219-7465.1        7

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1441, 1442 AND 1446

1  **within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities.**"

4  See Defendant's RFJN Exhibit 5, 85 Fed. Reg. 79191, 79197 (emphasis

5  added).

6  20.    The Fourth Amended Declaration confirms the interpretation of the

7  PREP Act is a matter of significant federal concern, and that removal of any case

8  involving the interpretation of that Act is proper in accordance with the Supreme

9  Court holding in *Grable*.

10  The world is facing an unprecedented pandemic. To effectively respond, there must be a **more consistent** pathway for Covered Persons to manufacture, distribute, **administer** or use Covered Countermeasures across the nation and the world. Thus, there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having **a uniform interpretation of the PREP Act**. [Emphasis added.]

14  See Defendant's RFJN Exhibit 5,  85 Fed. Reg. 79191, 79197 (emphasis added).

15  21.    On January 8, 2021, HHS issued an Advisory Opinion which explains

16  that the **"PREP Act is a 'Complete Preemption' Statute."** (See Defendant's RFJN

17  Exhibit 1, emphasis added.) In addition, the Advisory Opinion explains that the

18  **"Fourth Amendment to the Secretary's Declaration Supports the *Grable***

19  **Doctrine."** (*Id.*) The January 8, 2021 Advisory Opinion states "ordaining the metes

20  and bounds of PREP Act protection in the context of a national health emergency

21  *necessarily means that the case belongs in federal court*," pointing out that the Fourth

22  Amendment to the Secretary's PREP Declaration concluded similarly. (*Id.*)

23  Therefore, the Advisory Opinion advises that: "Once invoked, the court retains the

24  case to decide whether the immunity and preemption provisions apply; if they do not

25  apply, then the court would try the case as it would a diversity case. If the court finds,

26  though, that the PREP Act applies, it would dismiss the case or if death or serious

27  physical injury proximately caused by willful misconduct is alleged, transfer it to the

28  District Court for the District of Columbia. *See* 42 U.S.C. § 247d-6d(d)-(e)." (*Id.*)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

22.   The January 8, 2021 HHS Advisory Opinion provides that PREP Act immunity shall apply when a "covered person" is alleged to have failed to use a covered countermeasure to prevent the spread of COVID-19. The Advisory Opinion recognizes that "**District courts appear to have labored hard attempting to ordain whether the non-use of a covered countermeasure triggers the PREP Act and its complete preemption regime**." (See Defendant's RFJN Exhibit 1, emphasis added.) The Advisory Opinion states "the plain language of the PREP Act, which extends immunity to anything "relating to" the administration of a covered countermeasure," requires that"[p]rioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections." (*Id.*)

23.   The HHS Secretary's Fourth Amendment to the PREP Act clarified that "the Declaration must be construed in accordance with the Department of Health and Human Services (HHS) Office of the General Counsel (OGC) Advisory Opinions on the PREP Act and the Declaration. (See Defendant's RFJN Exhibit 5.) The Declaration "incorporates the Advisory Opinions for that purpose." (*Id.*) The PREP Act further provides the Secretary's actions pursuant to its authority to issue a declaration is immune from judicial review: "No court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this subsection. 42 U.S.C. § 247d-6d(b)(7).

## V.   PREP ACT IN GENERAL

24.   To qualify for liability immunity under the PREP Act, the healthcare provider must (1) meet the definition of a "Covered Person," (2) administer or use a "Covered Countermeasure," and (3) administer "Covered Countermeasures" during a "Recommended Activity" in relation to COVID-19. 42 U.S.C. § 247d-6d. Here, the PREP Act immunity applies preempting Plaintiffs' state law claims because Defendant is a covered healthcare provider who qualify as a person administering



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4827-4219-7465.1                                              9
NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1441,
1442 AND 1446

and/or using a covered countermeasure during the COVID-19 outbreak and emergency, and who qualifies as a program planner who supervises or administers a program with respect to the administration, dispensing, distribution, provision or use of a security countermeasure or a qualified pandemic or epidemic product, and provide a facility to administer or use a covered countermeasure to prevent and mitigate against the spread of COVID-19.

25.   Defendant is a "Covered Persons" as contemplated by 42 U.S.C. § 247d-6d. In pertinent part, a "covered person" includes a person or entity that "is a qualified person who prescribed, administered, or dispensed" or is a program planner of COVID-19 Countermeasures and "an official, agent or employee of a person or entity therein described." 42 U.S.C. § 247d-6d(i)(2)(B)(iv) and (v). A "qualified person" is defined as a "licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeasures under the law of the State in which the countermeasure was prescribed, administered, or dispensed." 42 U.S.C. § 247d-6d(i)(8) In addition, Defendant qualifies as program planner who supervises or administers a program with respect to the administration, dispensing, distribution, provision or use of a security countermeasure or a qualified pandemic or epidemic product, and provide a facility to administer or use a covered countermeasure to prevent and mitigate against the spread of COVID-19.  42 U.S.C. § 247d-6d(i)(6). Further, the PREP Act defines a "person" as an individual, partnership, corporation, association, entity, or public or private corporation, including a federal, state or local government agency or department." 42 U.S.C. § 247d-6d(i)(5).

26.   Plaintiffs' claims are preempted by the PREP Act. In this case, Plaintiffs' allegations relate to the measures taken by the Defendant to prevent or mitigate the spread of COVID-19 and its decision making related management and operation of its countermeasures, including the use of facemasks and other personal protective equipment, medication and testing. Defendant qualifies as a

4827-4219-7465.1

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1441, 1442 AND 1446

"covered person" because Defendant or healthcare providers and/or owners/officers of licensed health professionals authorized to administer and/or use FDA approved medical devices such as facemasks and of gowns and other personal protective devices and testing to prevent or mitigate the spread of COVID-19. The PREP Act immunity in this action preempts all state law claims, and its applicability poses a "substantial federal issue," which would serve to clarify and determine vital issues of law concerning the public health of the citizens of this country. The District Court, therefore, has original jurisdiction.

## VI. THE PREP ACT APPLIES BECAUSE DEFENDANT IS A COVERED PERSON.

27.     Immunity under the PREP Act is afforded to "covered persons" which include a person or entity that is a "program planner" of a covered countermeasure, and/or a qualified person who prescribed, administered, or dispensed such countermeasure. Under the Act, "person" includes "an individual, partnership, corporation, association, entity, or public or private corporation." 42 U.S.C. § 247d-6d(i)(2) and (5). The term "program planner" includes persons/entities "who supervised or administered a program with respect to the administration, dispensing, . . . provision, or use of a . . . qualified pandemic product or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with a [HHS Secretary's] declaration …." 42 U.S.C. §247d-6d (i)(6).

28.     A private sector employer or other person can be a "program planner" when it carries out prescribed activities. (See Defendant's RFJN- Exhibit 2 -March 10, 2020 Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, Federal Register, Vol. 85, No. 52, pg. 15199.) General Counsel for the Office of the Secretary of the Department of Health and Human Services recently issued a letter on August 14, 2020 which

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

provides that a "senior living community" meets the definition of a "program planner" to the extent that it supervises or administers a program with respect to the administration, dispensing, distribution, provision or use of a qualified pandemic or epidemic product, including the provision to a facility to administer or use a covered countermeasure. (See Defendant's RFJN- Exhibit 6.)

29.    The broad definition of "program planner" was also addressed in Advisory Opinion 20-04, issued October 22, 2020, by General Counsel Charrow. (See Defendant's RFJN- Exhibit 7.)

30.    Defendant was acting as a "program planner" and "qualified person." Villa Mesa Care Center is a residential care facility for the elderly licensed by the California Department of Public Health, which employs licensed nursing personnel who are authorized to prescribe, administer, or dispense the covered countermeasures set forth in Plaintiffs Complaint (i.e., PPE including facemasks, gloves, gowns, face shields, N95 masks, and COVID-19 testing) under the laws of the State of California.

31.    Plaintiffs' claims against Defendant include claims for abuse, neglect, and wrongful death. (See **Exhibit A**, generally.) Each cause of action is based on Plaintiffs' underlying theory that Defendant failed to exercise ordinary care to keep the premises, residents, and approaches safe by inadequately taking and enforcing precautions, providing, administering, and distributing inadequate personal protective equipment and devices. As referenced in Plaintiffs' Complaint, the precautions at issue concern Defendant's use of personal protective equipment, cohorting and testing as a countermeasure to prevent or mitigate the spread of COVID-19. These are the precise measures mentioned in the PREP Act Directive issued to address COVID-19.

32.    Federal jurisdiction is further appropriate as the state action "arises under" federal law and raises a substantial federal issue, actually disputed and substantial. *See Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.,* 545 U.S. 308 (2005). Further, the federal court in retaining jurisdiction would not disturb the balance of state and federal responsibilities. *Id.*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

33.     The PREP Act immunity in this action preempts all state law claims, and its applicability poses a "substantial federal issue," which would serve to clarify and determine vital issues of law concerning the public health of the citizens of this country. The District Court, therefore, has original jurisdiction.

## VII.   JURISDICTION EXISTS PURSUANT TO THE FEDERAL OFFICER REMOVAL STATUTE (28 U.S.C. § 1442(A)(1))

34.     Removal is also proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer.

35.     "Unlike the general removal statute, the federal officer removal statute [Section 1442(a)] is to be 'broadly construed' in favor of a federal forum." *Durham v. Lockheed Martin Corp.,* 445 F.3d 1247, 1252 (9th Cir. 2006) [noting the U.S. Supreme Court has held the right of removal is "absolute" for conduct performed under color of federal office, and "has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'"].

36.     The case is removable pursuant to Section 1442(a) because "(1) Defendants are 'persons' within the meaning of the statute; (2) the Plaintiff's claims are based upon Defendants' conduct 'acting under' the United States, its agencies, or its officers; (3) the Plaintiff's claims are 'for, or relating to' an act under color of federal office; and (4) Defendants raise a colorable federal defense to the Plaintiff's claims." *Stirling v. Minasian,* 955 F.3d 795 (9th Cir. 2020). All requirements for removal under § 1442(a)(1) are satisfied here.

37.     Defendant is a "person" under the federal officer removal statute pursuant to Section 1442(a)(1). *Goncalves v. Rady Children's Hosp. San Diego,* 865 F.3d 1237, 1245 (9th Cir. 2017); 1 U.S.C. § 1 [word "person" includes corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals].

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

38.     The "acting under" requirement, like the federal removal statute overall, is to be "liberally construe[d]" to cover actions that involve "an effort to assist, or to help carry out, the federal supervisor's duties or tasks." *Goncalves v. Rady Children's Hosp. San Diego,* 865 F.3d at 1247; *Ruppel v. CBS Corp.,* 701 F.3d 1176, 1181 (7th Cir. 2012) quoting *Watson v. Philip Morris Cos., Inc.,* 551 U.S. 142 (2007); see also *Defender Ass'n,* 790 F.3d 457, 468 (3d Cir. 2015).

39.     To satisfy the second requirement ("acting under" a federal officer) "a private persons actions 'must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Watson,* 551 U.S. at 152. Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp v. Fore-Kast Sales Co.,* 842 F.3d 805, 813 (3d Cir. 2016). This requirement, too, is to be liberally construed. *Watson,* 551 U.S. at 152.

40.     "[R]emoval by a 'person acting under' a federal officer must be predicated upon a showing that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations. *Cf. Bakalis v. Crossland Savings Bank,* 781 F. Supp. 140, 144-145 (E.D.N.Y. 1991) ('The rule that appears to emerge from the case law is one of 'regulation plus ...'.")." *Ryan v. Dow Chemical Co.,* 781 F. Supp. 934, 947 (E.D.N.Y. 1992) "This control requirement can be satisfied by strong government intervention and the threat that a defendant will be sued in state court 'based upon actions taken pursuant to federal direction.'" See *Fung v. Abex, Corp.,* 816 F. Supp. 569, 572 (N.D. Cal. 1992). The "acting under" requirement is met when Defendant is acting pursuant to detailed and ongoing instructions from a federal officer. *Winters v. Diamond Shamrock Chem. Co.,* 149 F.3d 387 (5th Cir. 1998).

41.     Prior to the current national pandemic, regulation of nursing homes was very general in nature. In 1987, Congress enacted legislation, known as the Nursing

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Home Reform Act, requiring nursing homes participating in Medicare and Medicaid to comply with certain quality of care rules and regulations. See 42 U.S.C. § 1396r, 42 U.S.C. §1395i-3 and 42 C.F.R. § 483.1 through 42 C.F.R. § 483.95. The Centers for Medicare and Medicaid Services, contracts with state surveyors, including the California Department of Public Health in California ("CDPH"), to perform federal surveys to ensure that facilities accepting Medicare and Medicaid (Medi-Cal) payments comply with federal laws and regulatory requirements. Generally, and prior to the pandemic, these surveyors conducted site visits to evaluate whether facilities are in compliance with federal requirements and regulations. See 42 U.S.C. § 1395aa; and 42 CFR § 488.10. If CDPH surveyors found a "deficiency" in a facility's compliance with federal regulations, CDPH would issue a deficiency or citation, and on occasion use the CMS enforcement remedy of a "directed plan of correction," under which the facility would develop and submit a plan of correction, which would then be enforced on behalf of CMS by CDPH.

42. In January, 2020, in response to the pandemic and the national state of emergency, CMS and the CDC, began issuing detailed directives to healthcare facilities as part of the coordinated national effort to respond to and contain the COVID-19 pandemic. CDPH surveyors, contracted by CMS, were supervising skilled nursing facilities with respect to all aspects of infection control and the pandemic response and ensuring strict compliance with the CMS directives. The issuance of in time and evolving guidance in response to a public health emergency was in contrast to the role of CMS before the pandemic. Prior to the pandemic, the focus was on ensuring compliance with existing regulations. However, throughout the pandemic, CMS and CDPH as its agent, specifically instructed facilities to take or not take particular clinical and operational actions in the absence of finding deficiencies that would otherwise require the facility to develop its own plan of correction. These directives included the following:

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

A.     Early directives to skilled nursing facilities focused on monitoring residents and staff for symptoms and protecting healthcare providers from infection due to contact with symptomatic patients. Facilities were advised to adhere to standards for infection prevention and take steps to prepare for COVID-19.

B.     In January and February, 2020, the CDC issued a number of health updates regarding COVID-19, as well as criteria to guide the evaluation and testing of patients under investigation ("PUI") for COVID-19. Healthcare providers were advised to identify PUI based on clinical features, travel to an affected geographic region and contact with a person confirmed to have tested positive for COVID-19. Persons meeting the PUI criteria were to be tested and healthcare providers were advised to immediately notify their local or state health department in the event they were evaluating a PUI. State health departments in turn were instructed to immediately contact the CDC and complete a PUI case investigation form. Initially COVID-19 testing was conducted solely through the CDC. The CDC also instructed healthcare providers to use standard, contact and airborne precautions when interacting with PUI. (See January 8, 2020, CDC Health Update Outbreak of Pneumonia of Unknown Etiology (PUE) in Wuhan China, a true and correct copy of which is attached to Defendant's RFJN as Exhibit 10; January 17, 2020 CDC Interim Infection Prevention and Control Recommendations for Patients with Known or Patients Under Investigation for 2019 Novel Coronavirus (2019-n-coV) in a Healthcare Setting, a true and correct copy of which is attached to Defendant's RFJN as Exhibit 11; January 24, 2020 CDC Interim Infection Prevention and Control Recommendations for Patients with Known or Patients Under Investigation for 2019 Novel Coronavirus (2019-n-coV) in a Healthcare Setting, a true and correct copy of which is attached to Defendant's RFJN as Exhibit 12.)

C.     On February 1, 2020, the CDC issued an "Update and Interim Guidance on the Outbreak of 2019 Novel Coronavirus" to provide further guidance to healthcare providers regarding 2019-nCoV 2019 (the 2019 Novel Coronavirus,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4827-4219-7465.1                                        16
NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1441,
1442 AND 1446

now known as COVID-19). ***The guidance was part of the "ongoing US public health response . . . to identify and contain [the] outbreak and prevent sustained spread of 2019-nCoV in the United States"*** and addressed infection prevention and control specific to 2019-nCoV. [Emphasis added.] The CDC noted that the first United States case was identified on January 21, 2020, and had recently traveled from Wuhan, China. The CDC provided updated directives related to screening of patients in healthcare facilities, and coordination with local health departments for testing and reporting of results. The Update set forth the criteria for assessing patients for COVID-19. Persons with a confirmed or suspected COVID-19 infection who were hospitalized were to be evaluated and cared for in a private room with the door closed, ideally an airborne infection isolation room. (See February 1, 2020 CDC Health Update and Interim Guidance on the Outbreak of 2019 Novel Coronavirus (2019-n-coV), a true and correct copy of which is attached to Defendant's RFJN as Exhibit 13.)

D.      In January and February, the California Department of Public Health ("CDPH") issued a number of All Facilities Letters (AFLs) communicating directives issued by the CDC with respect to identification of PUI and infection prevention and control. (See AFL20-09, 20-10, 20-11, 20-13, and 20-15, true and correct copies of which are attached collectively to Defendant's RFJN as Exhibit 14.)

E.      On February 6, 2020, CMS began preparing healthcare facilities for the national response to the emerging 2019 Novel Coronavirus by issuing a Memorandum to State Survey Agency Directors (i.e., CDPH"). The memo directed healthcare providers to adhere to CDC directives regarding the use of standard, contact and airborne precautions when interacting with PUI and advised facilities to have PPE measures and protocols in place. (See February 6, 2020 CMS Memorandum QSO 20-09-ALL, a true and correct copy of which is attached to Defendant's RFJN as Exhibit 15.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4827-4219-7465.1

17

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1441, 1442 AND 1446

F.  On February 28, 2020, the CDC issued a Health Update and Interim Guidance on the Outbreak of 2019 Novel Coronavirus (COVID-19) for healthcare providers. The Update noted  to date there had been limited spread in the United States. As of February 26, 2020, there were a total of 61 cases in the country, 46 of whom were repatriated person from high-risk settings. The guidance again included criteria to guide the evaluation and testing of patients under investigation ("PUI") for COVID-19. This update further added patients with fever and signs/symptoms of lower respiratory illness without an alternative explanatory diagnosis and no identified source of exposure to the list of those who should be tested. At this time, testing was being performed at state public health laboratories and the CDC. (See February 28, 2020 CDC Health Update and Interim Guidance on Outbreak of Coronavirus Disease 2019 (COVID-19), a true and correct copy of which is attached to Defendant's RFJN as Exhibit 16.)

G.  On or about March 3, 2020, the CDC issued "Strategies to Prevent the Spread of COVID-19 in Long-Term Care Facilities (LTCF)." This publication, issued specifically to facilities like Villa Mesa Care Center, reiterated that standard, contact and droplet precautions with eye protection were to be used in the care of residents with an undiagnosed respiratory infection. Facilities were advised to make PPE, including facemasks, eye protection, gowns and gloves available immediately outside the resident's room and to post signs on the door or wall outside the room of the residence to clearly describe the type of precautions needed and the required PPE. (See CDC "Strategies to Prevent the Spread of COVID-19 in Long-Term Care Facilities (LTCF), a true and correct copy of which is attached to Defendant's RFJN as Exhibit 17.)

H.  On March 3, 2020, CDPH communicated, via its All Facilities Letters, information contained in the CDC February 28, 2020 Interim Guidance and the CDC's March 3, 2020 guidance to long term care facilities in AFL 20-17.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4827-4219-7465.1

18

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1441, 1442 AND 1446

(See CDPH AFL 20-17, a true and correct copy of which is attached to Defendant's RFJN as Exhibit 18.)

I.      On March 4, 2020, CMS issued a Memorandum to State Survey Agency Directors regarding Infection Control and Prevention of Coronavirus Disease 2019 (COVID-19) in nursing homes. The State Survey Agency, as agent for CMS, was also responsible for disseminating the contents of the QSO memo to the States' nursing homes. Facilities were to screen visitors for international travel, symptoms of respiratory infection, and contact with someone with or under investigation for COVID-19, and to restrict entry of visitors who meet these criteria. Facilities were advised to screen staff for the criteria as well, and that staff who meet the criteria should not report to work. The CMS guidance also included directions as to when to transfer a resident with a suspected or confirmed COVID-19 infection to a hospital, and under what conditions a nursing home may accept patients diagnosed with COVID-19. CMS advised facilities to follow the available CDC guidance regarding infection prevention and control. (See CMS Memo QSO 20-14-NH, a true and correct copy of which is attached to Defendant's RFJN as Exhibit 19.)

J.      On March 8, 2020, the CDC issued further Updated Guidance on Evaluating and Testing Persons for Coronavirus Disease 2019 (COVID-19). The CDC advised that with the expanding spread of COVID-19, additional areas of geographic risk were being identified and the criteria for considering testing were being updated to reflect this spread. The Update indicated that additional COVID-19 testing was becoming available in clinical laboratories and the CDC had been specifically directing which persons could be tested.  (See March 8, 2020, the CDC issued further Updated Guidance on Evaluating and Testing Persons for Coronavirus Disease 2019 (COVID-19), a true and correct copy of which is attached to Defendant's RFJN as Exhibit 20.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4827-4219-7465.1

19

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1441, 1442 AND 1446

K.     On March 10, 2020, the CDC issued Interim Infection Prevention and Control Recommendations for Patients with Suspected or Confirmed Coronavirus Disease 2019 (COVID-19) in Healthcare Settings. The publication reiterated the directive regarding use of standard and transmission-based precautions, and directed healthcare providers who enter the room of a patient with known or suspected COVID-19 to adhere to standard precautions and use a respirator or facemask, gown, gloves and eye protection. The CDC advised that patients with known or suspected COVID-19 should be cared for in a single-person room with the door closed. Airborne infection isolation rooms were to be reserved for patients undergoing aerosol generating procedures. This CDC publication also noted that "[m]ajor distributors in the United States have reported shortages of PPE, specifically N95 respirators, facemask and gowns." Based on a local and regional shortages of PPE, the CDC advised that facemasks were an acceptable alternative when the supply chain of respirators cannot meet the demand. Facilities were instructed to prioritize respirators for situations where respiratory protection is most important. The CDC further advised that in the event of a shortage of medical gowns, gowns should also be prioritized for aerosol generating procedures. (See March 10, 2020, the CDC issued Interim Infection Prevention and Control Recommendations for Patients with Suspected or Confirmed Coronavirus Disease 2019 (COVID-19) in Healthcare Settings a true and correct copy of which is attached to Defendant's RFJN as Exhibit 21.)

L.     On March 10, 2020, CMS issued a Memorandum providing an update regarding the PPE recommendations issued by the CDC on March 10. (See CMS Memo QSO 20-17-ALL a true and correct copy of which is attached to Defendant's RFJN as Exhibit 22.)

M.     On March 11, 2020, CDPH issued an All Facilities Letter notifying long-term care facilities of the latest CDC and CMS directives for infection control and prevention and the March 4, 2020 visitation restrictions issued

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

by CMS. (See CDPH AFL 20-22, a true and correct copy of which is attached to Defendant's RFJN as Exhibit 23.)

N.      On March 13, 2020, President Trump declared the COVID-19 outbreak a national emergency. Following this proclamation, the CDC and CMS took swift action to waive restrictions and expand capacity for healthcare providers and suppliers to coordinate the national response to the nationally declared state of emergency. On March 13, 2020, CMS issued revised infection control and prevention directives for nursing homes to prevent the transmission of COVID-19. In the Memo, facilities were ordered to restrict visitation of all visitors and non-essential health care personnel, cancel communal dining and all group activities, implement active screening of residents and staff for fever and respiratory symptoms, and screen all staff at the beginning of their shift for fever and respiratory symptoms. Facilities were ordered to continue to follow applicable CDC guidelines. (See CMS Memo QSO 20-14-NH a true and correct copy of which is attached to Defendant's RFJN as Exhibit 24.)

O.      On March 17, 2020, the CDC issued documents containing instructions to optimize the supply of PPE such as eye protection, isolation gowns, N95 respirators and face masks. For facilities in contingency capacity, the CDC advised that extended use of facemasks should be implemented and that the use of facemasks should be restricted for use by healthcare providers rather than patients for source control. During crisis capacity, facilities were to prioritize facemasks for use during activities where prolonged face-to face or close contact with a potentially infectious patient is unavoidable, exclude healthcare providers at higher risk for severe illness from COVID-19 from contact with known or suspected COVID-19 patients, use a face shield with no mask, and in settings where facemasks were not available, use homemade masks. In the document pertaining to optimizing the use of N95 respirators, the CDC advised that (1) if the healthcare provider was to remain 6 feet away from a symptomatic patient, no facemask or

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4827-4219-7465.1                                                    21
NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1441,
1442 AND 1446

N95 respirator was required; (2) if the healthcare provider was to be within 3 to 6 feet of a symptomatic patient, a facemask should be used; and (3) if the healthcare provider was to be within 3 feet of a symptomatic patient including providing direct patient care, an N95 respiratory should be used if available. When an N95 respirator was not available, healthcare providers were instructed to wear a surgical mask and exclude healthcare providers at higher risk from severe illness from contact with an infectious patient. (True and correct copies of these documents are attached collectively to Defendant's RFJN as Exhibit 25.)

P.     On March 20, 2020, CMS issued a memo entitled Prioritization of Survey Activities. In the memo, CMS advised that CMS surveyors would be conducting targeted infection control surveys of providers identified in collaboration with the CDC and the HHS Assistant Secretary for Preparedness and Response to ensure providers are implementing actions to protect the health and safety of individuals to respond to the COVID-19 pandemic. A skilled facility would be subject to citation, and fines for failure to implement the directives from CMS. **Thus, the directives from CMS (which followed and instructed facilities to follow the CDC guidance) were truly mandates**, not recommendations. (See CMS Memo QSO 20-20-ALL, a true and correct copy of which is attached to Defendant's RFJN as Exhibit 26.)

Q.     On March 21, 2020, the CDC issued further guidance specifically aimed at long term care facilities entitled "Preparing for COVID-19: Long-term Care Facilities Nursing Homes." In this publication, nursing homes were advised to restrict visitation, restrict all volunteers and nonessential healthcare personnel, cancel group activities and communal dining, implement active screening of residents and healthcare providers for fever and respiratory symptoms, and make PPE available in areas where resident care is provided and place a trash can near the exit inside the resident's room so staff can discard PPE prior to exiting. The CDC further directed that "residents with known or suspected COVID-19 do

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1441, 1442 AND 1446

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

not need to be placed in an airborne infection isolation room (AIIR) but should ideally be placed in a private room with their own bathroom. Room sharing might be necessary if there are multiple residents with known or suspected COVID-19. As roommates of symptomatic residents might already be exposed, it is generally not recommended to separate them in this scenario." (See March 21, 2020, CDC publication entitled "Preparing for COVID-19: Long-term Care Facilities Nursing Homes," a true and correct copy of which is attached to Defendant's RFJN as Exhibit 27.)

R.    On April 2, 2020, CMS issued new guidelines directed towards long-term care facilities to "mitigate the spread" of COVID-19.  CMS noted that "[l]ong-term care facilities are a critical component of America's healthcare system…In recent weeks, CMS and CDC, at President Trump's direction have worked together to swiftly issue unprecedented targeted direction to the long-term care facility industry, including a general prohibition of visitors implemented on March 13, 2020, as well as strict infection control and other screening recommendations." CMS and the CDC were providing "critical, needed leadership for the Nation's long-term care facilities to prevent further spread of COVID-19" and that long term care facilities were to immediately implement symptom screening for all persons (residents, staff, visitors, outside healthcare workers, vendors, etc.) entering a long term care facilities. Facilities were ordered to specifically ask about COVID-19 symptoms and to check the temperature of all visitors, as well as limit access points and ensure that all accessible entrances have a screening station. Every resident was also to be assessed for symptoms and have their temperature checked every day, and patients and residents entering facilities screened for COVID-19 through testing, if available. CMS ordered facilities to ensure all staff are using appropriate PPE when interacting with residents to the extent PPE is available and per CDC guidance on the conservation of PPE. CMS further directed long term care facility staff to wear a facemask while in the facility for the duration of the state

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   of emergency, to wear full PPE for the care of any resident with known or suspected

2   COVID-19, and if COVID-19 transmission occurs in the facility, healthcare

3   personnel were to wear full PPE in the care of all residents irrespective of COVID-

4   19 diagnosis and symptoms. Further, to avoid transmission within long-term care

5   facilities, the facilities were advised to use separate staffing teams for COVID-19

6   positive residents to the best of their ability, and to work with State and local leaders

7   to designate separate facilities or units within a facility to separate COVID-19

8   negative residents from COVID-19 positive residents and individuals with unknown

9   COVID-19 status. (A true and correct copy of this April 2, 2020 CMS Directive is

10  attached to Defendant's RFJN as Exhibit 28.)

11          43.     Through the federal directives issued by the CDC, CMS, and the CDPH

12  surveyors contracted by CMS, federal authorities were making the operational

13  decisions as it related to the clinical pandemic response in skilled nursing facilities.

14  Facilities were ordered to restrict visitation, cancel communal dining, implement

15  active screening and staff for fever and respiratory symptoms, screen staff at the

16  beginning of their shift for fever and respiratory symptoms and actively take their

17  temperature and document the absence of shortness of breath and any new or change

18  in cough and sore throat. Facilities were instructed on which patients and staff to test

19  for COVID-19, under what circumstances to use and how to conserve PPE, when to

20  permit staff who had COVID-19 to return to work, and how to handle the isolation of

21  residents infected with COVID-19 and those under investigation for COVID-19.

22  These very detailed clinical directives and instructions represented a marked departure

23  from the regulatory structure which existed before the pandemic. Moreover, as

24  acknowledged by Health and Human Services Secretary Alex Azar in his Fourth

25  Amended Declaration Under the Public Readiness and Emergency Preparedness Act

26  for Medical Countermeasures Against COVID-19: "COVID-19 is an unprecedented

27  global challenge that requires a whole-of-nation response that utilizes federal-, state-

28  and local-distribution channels as well as private-distribution channels [for the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1441, 1442 AND 1446

provision of covered countermeasures].” (See page 12 of Defendant's RFJN Exhibit 5-December 3, 2020 Fourth Amended Declaration of Health and Human Services Secretary Azar Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19.)

44.    At all relevant times Villa Mesa Care Center was acting at the specific direction of federal authorities to address the on-going federal effort and national state of emergency to contain the COVID-19 pandemic, and prevent the spread of the virus. All actions taken by Villa Mesa Care Center in preparation for and response to the COVID-19 pandemic, were taken “in an effort to assist, or help carry out, the duties or tasks” as ordered by the CDC and CMS, and CDPH surveyors (per the contract with CMS), and performed pursuant to the direct orders and comprehensive and detailed directives issued by these agencies. Villa Mesa Care Center was acting at the direction of the federal government to prevent, treat and contain COVID-19 at the facility and in its care and treatment of David Carrillo.

45.    Defendant can establish a causal nexus between Plaintiffs' claims and the actions they took were under federal direction. *Winters v. Diamond Shamrock Chemical Co*., 149 F.3d 387, 398 (5th Cir. 1998). Here, Plaintiffs allege that due to the wrongful acts and omissions of Defendant, decedent, David Carrillo became infected with COVID-19 during his residency at Villa Mesa Care Center and died due to the virus on April  17, 2020. (**Exhibit A**.) Defendant's response to the COVID-19 pandemic as it relates to the claims of Plaintiffs (i.e., the care and treatment of David Carrillo) was directly related to the orders and directives issued by the federal government. There is a clear causal nexus between the claims against Defendant and the actions taken by Defendant at the direction of the federal government including, but not limited to, the direction of CDC, CMS, as well as by representatives of CDPH, the State Survey Agency acting under contract with CMS, with respect to the response to the pandemic at the facility and the administration of care to David Carrillo. The

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

nexus element is met as Defendant was following the orders/directives of CMS with regard to infection control, COVID-19 testing and the use of PPE.

46.    Defendant also meet the  requirement to assert colorable federal defenses. For purposes of removal, the defense must be "colorable" and need not be "clearly sustainable" as the purpose for the removal statue is to secure the validity of the defense may be tried in federal court. *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). The colorable federal defense element is met where a defendant alleges its actions were justified as the defendant was complying with federal directives with respect to the alleged wrongful acts. See *Venezia v. Robinson*, 16 F.3d 209, 212 (7th Cir. 1994); and *Mesa v. California*, 489 U.S. 121, 126-127. See also *Rural Community Workers Alliance v. Smithfield*, 2020 WL 2145350 (W.D. Mo.) finding that compliance with federal guidelines aimed to protect employees from COVID-19 exposure served as a defense to civil liability. Here, Defendant was complying with Federal directives and regulations issued by CMS, the CDC, and CDPH, the CMS contracted state surveyors, in responding to all aspects of the COVID-19 pandemic.

47.    As a colorable defense, Defendant also asserts an immunity defense under the Public Readiness and Emergency Preparedness Act ("PREP Act") as set forth at 42 U.S.C. 247d-6d(a)(1). This Act provides for immunity of "covered persons" from "suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of covered countermeasure" provided there has been a declaration issued by the Secretary of Health and Human Services with respect to such countermeasure. On March 10, 2020, United States Health and Human Services Secretary Alex M. Azar issued a Declaration invoking the PREP Act for the COVID-19 pandemic. The Declaration was effective as of February 4, 2020. (See Defendant's RFJN Exhibit 2). Defendant is a "covered person" under the act.

48.    Under the PREP Act and Secretary Azar's initial Declaration, "covered countermeasures" include any qualified pandemic or epidemic product; and any

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

drug, biologic product or device. Secretary Azar's Declaration also included as covered countermeasures "any antiviral drug, any biologic, any diagnostic, any other device or any vaccine used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, or any device used in the administration of any such product. . ."

49.    In the initial Declaration, Secretary Azar declared that "Administration of Covered Countermeasures means physical provision of the countermeasures to recipients, *or activities and decisions directly relating to public and private delivery, distribution, and dispensing of the countermeasures to recipients; management and operation of countermeasure programs; or management and operation of locations for purpose of distributing and dispensing countermeasures*." [Emphasis added.]

50.    Secretary Azar subsequently issued an Amended Declaration under the PREP Act, which was effective as of March 27, 2020. (See Defendant's RFJN Exhibit 3.) The Amendment added respiratory protective devices approved by NIOSH (National Institute for Occupational Safety and Health) as a covered countermeasure under the PREP Act. In the Amendment, the Secretary stated that "any respiratory protective devices approved by NIOSH . . . is a priority for use during the public health emergency that [the Secretary] declared on January 31, 2020 . . . for the entire United States to aid in response of the nation's health care community to the COVID-19 outbreak."

51.    On June 4, 2020, Secretary Azar further amended the March 10, 2020 Declaration to clarify that covered countermeasures under the Declaration include qualified products that limit the harm COVID-19 might otherwise cause. This Amendment was effective as of February 4, 2020. (See Defendant's RFJN Exhibit 4.)

52.    Plaintiffs' Complaint alleges that Defendant failed to prevent Decedent, David Carrillo from contracting COVID-19. Such claim by its nature relates to Defendant's administration and/or use of covered countermeasures and qualified

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

pandemic products including PPE, and COVID-19 testing kits, used to diagnose, mitigate, prevent, treat or cure COVID-19 or to limit the harm COVID-19 might otherwise cause, and therefore falls under the PREP Act. 42 U.S.C. §§ 247d-6d and 247d-6e (2006), which provides Defendant with immunity for such claims. Thus, the claims in Plaintiffs' Complaint relate to "covered countermeasures" under the PREP Act, which qualify for and trigger immunity from liability for the claims in this action.

53.     The PREP Act is applicable with respect to a "covered countermeasure," which definition includes: "(1) a qualified pandemic or epidemic product (as defined in § 247d-6d (i) (7)) . . . or (4) a respiratory protective device that is approved by the National Institute for Occupational Safety and Health ("NIOSH") and that the Health and Human Service Secretary determines to be a priority for use during a public health emergency declared under section 247d." 42 USC § 247d-6d (i) (1). A "qualified pandemic or epidemic product" is defined as: a drug, biologic product or device that is:

"(A)
(i) a product manufactured, used, designed, developed, modified, licensed, or procured—
(I) to diagnose, mitigate, prevent, treat, or cure a pandemic or epidemic; or
(II) to limit the harm such pandemic or epidemic might otherwise cause
(ii) a product, manufacture, used, designed, developed, modified, licensed, or procured to diagnose, mitigate, prevent, treat, or cure a serious of life-threatening disease or condition caused by a product described in clause (i);or
(iii) a product or technology intended to enhance the use or effect of a drug, biologic product, or device described in clause (i) or (ii); and

(B)
(i) approved or cleared under chapter V of the Federal Food, Drug, and Cosmetic Act or licensed under section 262 of this title;
(ii) the object of research for possible use as described in subparagraph (A) and is the subject of an exemption under section 505(i) or 520(g) of the Federal Food, Drug, and Cosmetic Act; or
(iii) authorized for emergency use in accordance with section 564, 564A, or 564B of the Federal Food, Drug and Cosmetic Act."

See 42 USC § 247d-6d (i)(7).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4827-4219-7465.1

28

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1441, 1442 AND 1446

54.     The Department of Health and Human Services Office of the Secretary, issued an omnibus advisory opinion to address questions and concerns regarding the scope of the PREP Act immunity for the COVID-19 pandemic. The Opinion summarized the requirements to meet the definition of a qualified pandemic or epidemic product noting that the product:

(1) must be used for COVID-19; and
(2) must be
    (a) approved, licensed, or cleared by FDA;
    (b) authorized under an EUA [emergency use authorization];
    (c) described in an EUA [emergency use instructions]; or
    (d) used under either an Investigational new Drug (IND) application or an Investigational Device Exemption."

(See Advisory Opinion attached as Exhibit 8 to Defendant's RFJN, pg. 4.)

55.     Moreover, attached as Appendix A to this Advisory Opinion is a list of the "covered countermeasures" for which emergency use authorizations have been issued by the United States Food and Drug Administration. (See Exhibit 9 to Defendant's RFJN.) The list includes twelve pages of COVID-19 test kits, and provides that face shields, gowns, shoe covers, non-surgical isolation gowns, surgical caps, properly labeled non-surgical masks, and certain non-NIOSH approved respirators are covered by an EUA. Surgical masks are not listed; however, such masks are Class II medical devices which are cleared by the FDA for use. (See 21 CFR 878.4040). Thus, COVID-19 testing kits, face masks, gowns, gloves and other PPE are "qualified pandemic or epidemic products" and "covered countermeasures" under the PREP Act, as such products are either FDA cleared/approved or are included in an EUA.

/ / /

/ / /

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4827-4219-7465.1

29

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1441, 1442 AND 1446

**VIII. PREP ACT IMMUNITY APPLIES WHERE THERE IS A CAUSAL CONNECTION BETWEEN THE USE AND ADMINISTRATION OF COVERED COUNTERMEASURES BY DEFENDANT, A COVERED PERSON**

56.     Immunity under the PREP Act "applies to **any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the** . . . distribution . . . **purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure**." [Emphasis added.] 42 USC § 247d-6d (a)(2)(B).

57.     Plaintiffs allege that Defendant failed to prevent decedent, David Carrillo, from contracting COVID-19. Such claim by its nature arises out of Defendant's use, distribution, procurement and administration of covered countermeasures/qualified pandemic products used to diagnose, mitigate, prevent, treat or cure the COVID-19 virus, or to limit the harm COVID-19 might otherwise cause thereby triggering application of the PREP Act.

58.     The following are an exemplary, but in no way complete list of some of the detailed directives and regulations issued by the HHS, Centers for Medicare and Medicaid Services ("CMS") and the Centers for Disease Control ("CDC") to specifically compel healthcare providers and nursing homes like Defendant's to assist in the national effort to respond to the COVID-19 pandemic.

59.     In Section IX of his March 10, 2020 Declaration, Secretary Azar defines "administration of a covered countermeasure" as the "physical provision of the countermeasures to recipients ***or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients***; ***management and operation of countermeasure programs; or management and operation of locations for purpose of distributing and dispensing countermeasures***." [Emphasis added.] (See Defendant's RFJN Exhibit 2.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

60.     Under the PREP Act, the Secretary may specify that liability protections are in effect only for Covered Countermeasures obtained through a particular means of distribution. Section VII of Secretary Azar's initial March 10, 2020 Declaration provided that "liability immunity is afforded to Covered Persons only for Recommended Activities that are related to (a) Present or future federal contracts, cooperative agreements, grants, other transactions, interagency agreements, memoranda of understanding, or other federal agreements; or (b) Activities authorized in accordance with public health and medical response of the Authority Having Jurisdiction to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures following a Declaration of an emergency." (See Defendant's RFJN Exhibit 2.)

61.     Secretary Azar's Fourth Amended Declaration amended Section VII of the Declaration. This Fourth Amendment provides that "***COVID-19 is an unprecedented global challenge that requires a whole-of-nation response that utilizes federal-, state-, and local-distribution channels as well as private-distribution channels. Given the broad scale of this pandemic, the Secretary amends [Section VII of] the Declaration to extend PREP Act coverage to additional private-distribution channels*** . . . ." [Emphasis added.] (See Page 12 of Defendant's RFJN-Exhibit 5.)

62.     The Fourth Amended Declaration specifically provides that Section VII of the Declaration is amended to extend liability protection under the PREP Act to Covered Persons for Recommended Activities that are related to: "Covered Countermeasures that are:

i.   Licensed, approved, cleared or authorized by the FDA (or that are permitted to be used under an Investigational New Drug Application or an Investigational Device Exemption) under the FD&C Act or PHS Act to treat, diagnose, cure, prevent, mitigate, or limit the harm from COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom; or

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

ii. A respiratory protective device approved by NIOSH under 42 CFR part 84, or any successor regulations, that the Secretary determines to be priority for use during a public health emergency declared under section 319 of the PHS Act to prevent, mitigate, or limit the harm from COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom."

(See Pages 22-23 of Defendant's RFJN- Exhibit 5.)

63.    The PREP Act was designed to apply to individuals and entities responding to public health emergencies, and provides immunity for claims involving "covered countermeasures" under the Act. The broad definition of "administration of a covered countermeasure" set forth in Secretary Azar's declaration encompasses Defendant's plans and decisions with respect to how best to utilize and optimize supplies of PPE and COVID-19 testing kits, and whether and when the use of such countermeasures is appropriate.   Moreover, during the relevant time frame to Plaintiffs' claims, Defendant was subject to guidance/directives issued by the Centers for Disease Control and Prevention ("CDC"), Centers for Medicaid and Medicare Services ("CMS"), and the California Department of Public Health ("CDPH"), and was following this applicable public health guidance with respect to the use of PPE and COVID-19 testing. Defendant has thus established that they have immunity under the PREP Act as it relates to Plaintiffs' claims relating to deficiencies in the use of PPE or COVID-19 testing.

## IX.    THIS CASE RAISES IMPORTANT FEDERAL ISSUES GRANTING FEDERAL QUESTION JURISDICTION OVER THE MATTER

64.    The healthcare community's response to this pandemic was coordinated at a national level by the Department of Health and Human Services, the CDC, the FDA and CMS, and entailed the issuance of detailed directives to healthcare providers to identify and sequester infected patients, which patients under investigation were to be tested, and the use of personal protective equipment. All cases positive for COVID-19 were reported to the CDC, and initially all testing was

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1441, 1442 AND 1446

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

conducted solely through the CDC. This case involves issues of national importance related to Defendant's response to a national public health state of emergency, which has not been seen by this country in over a century.  Plaintiffs' claims in this lawsuit invoke a substantial federal question regarding the extent to which the broad immunities afforded under the PREP Act apply to Defendant's conduct.

65.    The federal courts have a substantial interest in determining the application of the PREP Act in this matter. The PREP Act and its triggering immunity, has been invoked in exceptionally rare circumstances since it was enacted in 2005. The PREP Act and HHS Secretary Azar's declarations confer a broad and sweeping immunity to individuals and entities fighting the COVID-19 pandemic during this declared state of emergency. The unique character of the COVID-19 virus as well as its high communicability, required Secretary Azar to set forth an expansive declaration covering broad categories of measures to fight the pandemic including COVID-19 testing and PPE, all of which require interpretation as to the scope and application. Thus, there can be no doubt that there is a substantial and compelling interest for the PREP Act and the Secretary's declaration to be interpreted by the Federal Courts. Moreover, the Federal Court is uniquely and properly positioned to interpret Congressional intent and interests of the federal government.

66.    This case also satisfies the second prong set forth in *Grable*. Federal jurisdiction over Plaintiffs' claims will not disturb federal-state comity principles under *Grable*. As set forth by Secretary Azar in his Fourth Amended Declaration: "Through the PREP Act, Congress delegated to me the authority to strike the appropriate Federal-state balance with respect to particular Covered Countermeasures through PREP Act declaration." Moreover, the plain, statutory language of the PREP Act expresses a strong federal interest and a clear intention to supersede or preempt state control of the issues raised by Plaintiffs' Complaint.

67.    Congress did not intend the application of PREP Act immunity to be decided by State Courts. As such, this Court would not be disturbing or infringing on

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4827-4219-7465.1                                      33
NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1441,
1442 AND 1446

any balance of State and Federal judicial responsibilities by retaining jurisdiction. To the contrary, the plain language of the statute seeks to assert broad federal authority over the issues arising under the Act, and seeks to eliminate all semblance of State Court control. Secretary Azar's Fourth Amended Declaration makes explicitly clear that there is exclusive federal jurisdiction over lawsuits involving covered countermeasures, and that this "federal jurisdiction" is essential to the uniform provision of a national response to the COVID-19 pandemic and the PREP Act.

68.    At all relevant times, Defendant in the present action, in its preparation and response to the COVID-19 outbreak, were acting at the specific instruction and oversight of the federal government, specifically the Department of Health and Human Services, the Centers for Medicare and Medicaid Services, and the Center for Disease Control and Prevention in responding to a federal effort to address the ongoing national state of emergency. Defendant's actions were taken "in an effort to assist, or to help carry out, the duties or tasks" dictated by the CDC and CMS in responding to the COVID-19 pandemic.

69.    Defendant's actions and conduct were taken due to unprecedented and "strong government intervention" which went beyond the "mere auspices of federal direction." *See Fung v. Abex Corp.,* 816 F. Supp. 569, 572 (N.D. Cal. 1992).

70.    Defendant was acting specifically at the direction and under the supervision of the United States government with respect to various countermeasures implemented to prevent and treat the COVID-19 virus, including following evolving and specific guidelines from CMS and CDC with respect to: (1) infection control policies and procedures; (2) PPE procurement; (3) PPE allocation; (4) admission and discharge of residents; (5) managing visitors and outside persons, (6) staffing allocation and retention; (7) isolation protocols and management, among multiple additional directives.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4827-4219-7465.1

34

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1441, 1442 AND 1446

71.    Defendant's response to the COVID-19 outbreak as it relates to these Plaintiffs' decedent was directly related to *what they were asked to do* by the federal government.

72.    As previously set forth, Defendant asserts it is immune from liability in this matter under the PREP Act as they meet the requirements of "covered person" as contemplated by 42 U.S.C. § 247d-6d(i)(2)(B)(iv). Further, Defendant's actions specifically related to this claim constitute "covered countermeasures" pursuant to the PREP Act, which would qualify for and trigger immunity from liability for the purposes of the present suit.

## X.    FILING OF REMOVAL PAPERS

73.    Pursuant to 28 U.S.C. § 1446(d), contemporaneously with the removal of this action to this Court, Defendant has provided written notice of removal to Plaintiffs' Counsel and has filed a Notice to State Court of Removal to Federal Court with the Superior Court of California, County of San Bernardino. A true and correct copy of the Notice to Adverse Party of Removal of Action is attached here as **Exhibit B**. A true and correct copy of the Notice to State Court of Removal to Federal Court is attached hereto as **Exhibit C.**

## XI.    NO WAIVER

74.    Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of Defendant's right to assert any defense or affirmative matter including, without limitation, the defenses of (1) lack of jurisdiction over a person; (2) improper venue; (3) insufficiency of process; (4) insufficiency of service of process; (5) failure to state a claim; or (6) any other procedural or substantive defense available under state or federal law.

75.    Removal to federal court is proper in this case and the undersigned counsel for Defendant, has read the foregoing and signs this Notice of Removal pursuant to Rule 11 of the Federal Rules of Civil Procedures, as required by 28 U.S.C. § 1446(a).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    **WHEREFORE**, Defendant SELA HEALTHCARE, INC., dba VILLA MESA

2   CARE CENTER, respectfully removes this action from the Superior Court of

3   California, County of San Bernardino, to this Court pursuant to 28 U.S.C. §§ 1332,

4   1441, 1446, and provides Plaintiffs of notice of same. Should any question arise as to

5   the propriety of this removal, Defendant respectfully requests an opportunity to

6   provide further briefing and oral argument.

7

8   DATED: January 26, 2021          LEWIS BRISBOIS BISGAARD & SMITH LLP

9

10

11                                 By:  /s/ Lynnette A. Christopoulos
                                        KATHLEEN M. WALKER
12                                      LYNNETTE A. CHRISTOPOULOS
                                        Attorneys for Defendant SELA
13                                      HEALTHCARE, INC., dba VILLA MESA
                                        CARE CENTER
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1

## **<u>EXHIBIT TABLE OF CONTENTS</u>**

2

**<u>Pages</u>**

3   EXHIBIT A: Pleadings................................................................ 38

4       1.  Summons ............................................................ 39-40

5       2.  Complaint ........................................................... 41-68

6       3.  Civil Case Cover Sheet.................................... 69-70

7       4.  Certificate of Assignment ............................... 71-72

8       5.  Notice of Trial Setting Conference and Notice of Case Assignment . 73-74

9

10   EXHIBIT B: Notice to Adverse Party of Removal to Federal Court.................. 75-79

11   EXHIBIT C: Notice to State Court of Removal to Federal Court ..................... 80-83

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1441, 1442 AND 1446

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
KATHLEEN M. WALKER, SB # 156128
   E-Mail: Kathleen.Walker@lewisbrisbois.com
LYNNETTE A. CHRISTOPOULOS, SB # 192123
   E-Mail: Lynnette.Christopoulos@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendant SELA
HEALTHCARE, INC., dba VILLA
MESA CARE CENTER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CYNTHIA CARRILLO, individually and as heir of DAVID CARRILLO, deceased,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>VILLA MESA CARE CENTER, a/k/a San Antonio Post Acute, and DOES 1-50,<br><br>　　　　　Defendants. | CASE NO.<br><br>**DEFENDANT'S PROOF OF SERVICE RE NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1441, 1442 AND 1446** |

## FEDERAL COURT PROOF OF SERVICE

At the time of service, I was over 18 years of age and not a party to the action. My business address is 633 West 5th Street, Suite 4000, Los Angeles, CA 90071. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On January 26, 2021, I served the following document(s):

**NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1441, 1442 AND 1446; EXHIBITS**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

1

Anne Marie Murphy, Esq.
Samuel Gutin, Esq.
Cotchett, Pitre & McCarthy
800 Malcom Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
E-mail:  AMurphy@cpmlegal.com
E-mail: sgutin@cpmlegal.com
*Attorneys for Plaintiffs*

Carlos Urzua, Esq.
Kali V. Fournier, Esq.
Cotchett, Pitre & McCarthy
2716 Ocean Park Blvd., #3088
Santa Monica, CA 90405
Tel: (310) 392-2008
E-mail:  curzua@cpmlegal.com
E-mail:  kfournier@cpmlegal.com
*Attorneys for Plaintiffs*

The documents were served by the following means:

☒ (BY COURT'S CM/ECF SYSTEM)  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

☒ (BY ELECTRONIC TRANSMISSION ONLY)  Only by e-mailing the document(s) to the persons at the e-mail address(es) listed above based on notice provided on March 16, 2020 that, during the Coronavirus (COVID-19) pandemic, this office will be working remotely, not able to send physical mail as usual, and is therefore using only electronic mail. No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on January 26, 2021 at Los Angeles, California.

*/s/ Yissel Lopez*
Yissel Lopez

2

DEFENDANT'S PROOF OF SERVICE RE NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1441, 1442 AND 1446