ANNE MARIE MURPHY (SBN 202540)
amurphy@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

GARY A. PRAGLIN (SBN101256)
gpraglin@cpmlegal.com
KELLY W. WEIL (SBN 291398)
kweil@cpmlegal.com
CARLOS URZUA (SBN 303176)
curzua@cpmlegal.com
KALI V. FOURNIER (SBN 320579)
kfournier@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
2716 Ocean Park Boulevard, Suite 3088
Santa Monica, CA 90405
Telephone: (310) 392-2008
Facsimile: (310) 392-0111

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CYNTHIA CARRILLO**, individually and as heir of **DAVID CARRILLO, deceased**,<br><br>        Plaintiff,<br><br>        v.<br><br>**VILLA MESA CARE CENTER, a/k/a San Antonio Post Acute Facility**; and **DOES 1-50**,<br><br>        Defendants. | CASE NO: 5:21-cv-00150 FLA-SP<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**<br><br>Judge: Hon. Fernando L. Aenlle-Rocha<br>Magistrate Judge: Hon. Sheri Pym<br><br>Date:   April 9, 2021<br>Time:   1:30 p.m.<br>Place:  Courtroom 6B<br><br>Action Filed:  January 26, 2021<br>Trial Date:    None Set |

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ...................................................................................................3

  A. Procedural History and Factual Allegations ...................................................3

III. LEGAL STANDARD FOR REMOVAL AND REMAND ...................................6

IV. DEFENDANTS' EXCLUSIVE FEDERAL QUESTION ARGUMENT LACKS MERIT ....7

  A. Plaintiff's Complaint Does Not Present any Federal Question and Therefore This Court Does Not Have Federal Question Jurisdiction Under 28 U.S.C. § 1331. .............................7

  B. The PREP Act Does Not Apply and Should not Serve as a Basis for Jurisdiction ..................8

    1. Defendant is Not Protected by The Fourth Amended Declaration .........................................8

    2. Plaintiff Does Not Allege Claims Based on the Use of a "Covered Countermeasure" and Therefore the PREP Act is Not Implicated............................................11

    3. Defendant is Not A "Program Planner" Nor "Qualified Person" Under The PREP Act.......12

    4. The Fourth Amended Declaration Does Not Criticize a Single Federal Decision That Rejected Removal Based on the PREP Act............................................12

    5. The Consensus Among District Courts is Remand............................................13

  C. Plaintiff's Complaint Does Not Present any Federal Question and Therefore This Court Does Not Have Federal Question Jurisdiction Under 28 U.S.C. § 1331 .............................15

  D. Complete Preemption Does Not Apply to Plaintiff's State Law Claims.................................17

    1. Complete Preemption is Moot Because the PREP Act Does Not Apply.............................18

    2. Complete Preemption as an Exception to The General Rule Against Federal Question Jurisdiction is Not Implicated in This Case..........................................19

V. "FEDERAL OFFICER" REMOVAL IS NOT SUPPORTED ...............................21

  A. Defendant Was not "Acting Under" the Direction of a Federal Officer .................................22

  B. Defendant Did Not Establish a Causal Connection Between Their Actions and Asserted Official Duty............................................24

  C. Defendant Did Not Establish a Colorable Defense Based Upon Federal Law ........................25

**VI. CONCLUSION**................................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Cases**

4

*Anson v. HCP Prairie Village KS Opco LLC,*

5
    2021 WL 308156 (D. Kan. Jan. 29, 2021)................................................................24

6

*Beneficial Nat'l Bank v. Anderson,*

7
    539 U.S. 1 (2003)................................................................................................10, 25

8

*Block, et al. v. Big Blue Healthcare,*
    2:2020cv02262, 2020 U.S. Dist. LEXIS 150012 (D. Kan. August 19, 2020)...............17

9

*California v. AbbVie Inc.,*

10
    390 F. Supp. 3d 1176 (N.D. Cal. 2019) ......................................................................10

11

*Caterpillar Inc. v. Williams,*
    482 U.S. 386 (1987)...........................................................................10, 11, 20, 25

12

*Darue Engineering & Manufacturing,*

13
    545 U.S. 308 (2005)............................................................................................17, 19

14

*Davis v. South Carolina,*

15
    107 U.S. 597 (1883)...............................................................................................26

16

*Duncan v. Stuetzle,*
    76 F.3d 1480 (9th Cir.1996) ...................................................................................10

17

In the matter of *Emma Martin et al v. Serrano Post Acute, LLC, et al.,*

18
    Case No. 2:20-cv-05937-DSF-SK, Dkt. No. 18 ........................................................22

19

*Fidelitad, Inc. v. Insitu, Inc.,*

20
    904 F.3d 1095 (9th Cir. 2018) .......................................................................6, 26, 28

21

*Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust*
    *Fund,*

22
    538 F.3d 594 (7th Cir. 2008) ................................................................................23

23

*Garcia v. Welltower OpCo Grp.,*
    No. 20-CV-2250 (JVS) (KES) .........................................................................18, 19

24

*Gaus v. Miles, Inc.,*

25
    980 F.2d 564 (9th Cir. 1992) ....................................................................................10

26

*Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka,*

27
    599 F.3d 1102 (9th Cir. 2010) .................................................................................10

28

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives,*
    140 S. Ct. 789 (2020) (Statement of Gorsuch, J.)....................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Gunn v. Minton,*
  568 U.S. 251 (2013)............................................................................................19, 20

*Gunter v. CCRC OPCO-Freedom Square, LLC,*
  No: 8:20-cv1546-T-36TGW, 2020 U.S. LEXIS 201622 (M.D. Fla. October 29,
  2020) ..........................................................................................................................17

*Hansen v. Grp. Health Coop.,*
  902 F.3d 1051 (9th Cir. 2018) ................................................................................22, 24

*Jackson v. Big Blue Healthcare, Inc.,*
  2020 WL 4815099 (D. Kan. Aug. 19, 2020) ...........................................................22, 24

*Kehler v. Hood,*
  2012 WL 1945952 (E.D. Mo. 2012).........................................................................23

*Lehmann v. Brown,*
  230 F.3d 916 (7th Cir. 2000) ....................................................................................25

*Libhart v. Santa Monica Dairy Co.,*
  592 F.2d 1062 (9th Cir. 1979) ..................................................................................10

*California ex rel. Lockyer v. Dynegy, Inc.,*
  375 F.3d 831 (9th Cir. 2003) ....................................................................................22

*Estate of Maglioli v. Andover Subacute Rehab. Ctr.*
  I, 2020 WL 4671091 (D.N.J. Aug. 12, 2020)............................................................24

*Maglioli v. Andover Subacute Rehabilitation Center,*
  Civ. No. 20-6605, 2020 U.S. Dist. LEXIS 145055 (D. N.J. August 12, 2020)............16

*Marin General Hosp. v. Modesto & Empire Traction,*
  581 F.3d 941 (9th Cir. 2009) ....................................................................................11

*Maryland v. Soper,*
  270 U.S. 9 (1926)......................................................................................................26, 28

*Moore Thomas v. Alaska Airlines, Inc.,*
  553 F.3d 1241 (9th Cir. 2009) ..................................................................................22

*N.G. v. Downey Reg'l Med. Ctr.,*
  140 F. Supp. 3d 1036 (C.D. Cal. 2015) ....................................................................26, 27

*Nevada v. Bank of America Corp.,*
  672 F.3d 661 (9th Cir. 2012) ....................................................................................20

*Panther Brands, LLC v. Indy Racing League, LLC,*
  827 F.3d 586 (7th Cir. 2016) ....................................................................................26

*Riggs v. Airbus Helicopters, Inc.*,
  939 F.3d 981 (9th Cir. 2019), *cert. denied,* No. 19-1158, 2020 WL 3492671 (U.S. June 29, 2020) ...................................................................................................................28

*Sherod v. Comprehensive Healthcare Mgmt. Servs. LLC*,
  20cv1198, 2020 U.S. Dist. LEXIS 191885 (W.D. Pa. October 16, 2020) ....................17

*Vaccarino v. Aetna, Inc.*,
  2018 WL 6249707 (C.D. Cal. Nov. 29, 2018) ...............................................................28

*Watson v. Philip Morris*,
  551 U.S. 153 ...................................................................................................................27

*Watson v. Philip Morris Cos., Inc.*,
  551 U.S. 142 (2007) ...................................................................................................6, 26

**Statutes**

42 U.S.C.A.

  § 247d-6d (i)(1)(A) ........................................................................................................11

28 U.S.C.

  § 1331 .............................................................................................................................10

  § 1332(a) ........................................................................................................................10

  § 1441 .............................................................................................................................10

  § 1441(a) ...................................................................................................................10, 18

  §1442(a)(1) ..................................................................................................6, 25, 26, 27

  § 1441(b) ........................................................................................................................10

  § 1447(c) .......................................................................................................................4, 5

29 U.S.C.

  §1331 .......................................................................................................................*passim*

42 U.S.C.

  §247d-6d .........................................................................................................................5

  § 247d-6d(a)(1) .............................................................................................................16

  § 247d–6d(b)(1) ............................................................................................................11

  § 247d–6d(b)(4) ............................................................................................................12

§ 247d-6d (i)(2) ................................................................................................ 16

§ 247d-6d (i)(6) ................................................................................................ 16

§ 247d-6d (i)(8) ................................................................................................ 16

§ 247d-6d(2)(B) ................................................................................................ 16

§ 247d-6e .......................................................................................................... 29

U.S. Code

§ 1332 ................................................................................................................ 4

**Other Authorities**

85 Fed. Reg. 52, Section VI ............................................................................. 15

85 Fed. Reg. at 79,197 ..................................................................................... 23

85 FR 79190, at 79191 ..................................................................................... 13

85 FR 79190, at 79197 ..................................................................................... 14

85 FR 79190, Section XI, at 79194 ................................................................. 17

166 A.L.R. Fed. 297 (Originally published in 2000) ...................................... 25

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

2       PLEASE TAKE NOTICE AND NOTICE IS HEREBY GIVEN THAT on

3   Friday, April 9, 2021 at 1:30 p.m., Courtroom 6B of the above-entitled Court, located

4   at 350 W. 1st Street, Los Angeles, California 90012, Plaintiff CYNTHIA CARRILLO,

5   moves this Court for an order remanding this action to the San Bernardino County

6   Superior Court. Plaintiff makes this motion pursuant to 28 U.S.C. § 1447(c), because

7   this Court lacks federal subject matter jurisdiction.[1]

8       Defendant VILLA MESA CARE CENTER, a/k/a San Antonio Post Acute

9   Facility (hereinafter collectively "Defendant") removed this case to federal court by

10  attempting to create federal subject matter jurisdiction in two separate ways.  Because

11  neither of Defendant's arguments has any merit, this case should be remanded to state

12  court.

13      This Motion is based on this Notice of Motion and Motion to Remand, the

14  accompanying Memorandum of Points and Authorities, the Declaration of Anne Marie

15  Murphy, the Proposed Order, all records and papers on file in this action, any oral

16  argument, and any other evidence that the Court may consider in hearing this motion.

17

18  Dated:  February 25, 2021          **COTCHETT, PITRE & McCARTHY, LLP**

19                                     By:_ */s/ Anne Marie Murphy*

20                                         ANNE MARIE MURPHY
                                           CARLOS URZUA
21                                         KALI V. FOURNIER
                                           Attorneys for Plaintiffs
22

23

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

---

[1] The parties agree that diversity jurisdiction does not apply because there is not
complete diversity as required by 28 U.S. Code § 1332.

**PLAINTIFF'S MOTION TO REMAND; CASE NO. 5:21-cv-00150 FLA-SP**

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Pursuant to 28 U.S.C. § 1447(c), Plaintiff Cynthia Carrillo ("Plaintiff") requests remand for lack of federal subject matter jurisdiction.

I.    <u>INTRODUCTION</u>

This case involves the physical abuse and neglect of dependent adult, David Carrillo (hereafter "David or Mr. Carrillo") while residing at Villa Mesa Care Center ("VMCC") nursing home in San Bernardino, California, which ultimately led to his untimely death after contracting COVID-19. Tragically, David's death was not an unavoidable Act of God – but a result of a combination of Defendant's failures to provide David with adequate services to meet his basic needs, such as nutrition, hydration, hygiene, and protection, and a long history of sub-standard care that resulted in egregious elder abuse and neglect. Plaintiff filed suit in state court against the nursing facility asserting various state-law claims for violations of elder and dependent adult civil protection act, negligence, wrongful death, and violations of resident rights. (*See* ECF Dkt. No. 1-3, hereinafter, "Complaint").

Defendant removed the matter to this Court on two alleged independent grounds. First, Defendant removed this case pursuant to 29 U.S.C. §1331, claiming that this Court has subject matter jurisdiction. Defendant relies on the PREP Act, which provides immunity from liability for claims for loss related to "the administration to or the use by an individual of a Covered Countermeasure."[1] According to Defendant, Plaintiff's state law claims involve an embedded federal question, and the PREP Act completely pre-empts those state law claims, thereby vesting this Court with subject matter jurisdiction, because (they claim) the statute provides them with an affirmative defense to liability for Plaintiff's state law claims.

As more fully discussed *infra,* the PREP Act does not apply because Plaintiff's

---

[1] A "Covered Countermeasure" is defined by the PREP Act to include drugs, products manufactured, used, designed, developed, modified, licensed, or procured to diagnose, mitigate, prevent, treat, or cure a serious or life-threatening disease, and certain respiratory protective devices.  *See* 42 U.S.C. §247d-6d.

1   claims all relate to Defendant's **inactions**, not to Defendant's affirmative

2   administration or *use of anything*; and Plaintiff's claims relate to Defendant's

3   appallingly inadequate practices and protocols, and not to any drug, product or device

4   (i.e., to any "Covered Countermeasure".) Additionally, under the well-pleaded

5   complaint rule, only Plaintiff's actual claims (and not the anticipated defenses of a

6   defendant) are considered in determining federal subject matter jurisdiction.

7       Second, Defendant also removes this case pursuant to 28 U.S.C. §1442(a)(1)

8   because, they claim, at all relevant times they were "acting under" the direction of a

9   federal officer. However, as the Supreme Court has held, "[A] private firm's

10  compliance (or noncompliance) with federal laws, rules, and regulations does not by

11  itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'

12  And that is so even if the regulation is highly detailed and even if the private firm's

13  activities are highly supervised and monitored." *Watson v. Philip Morris Cos., Inc*.,

14  551 U.S. 142, 152-53 (2007). Rather, "[f]or a private entity to be 'acting under' a

15  federal officer, the private entity must be involved in 'an effort to assist, or to help

16  carry out, the duties or tasks of the federal superior." *Fidelitad, Inc. v. Insitu*, Inc., 904

17  F.3d 1095, 1099 (9th Cir. 2018). Defendant fails to establish that it was assisting a

18  federal officer or agency in carrying out the duties or tasks of the federal superior, or

19  any other reason that 28 U.S.C. §1442(a)(1) is applicable in this case.

20      Defendant's reliance on the Fourth Amended Declaration is also misguided. The

21  Notice of Removal does not even attempt to state that any drug, product, or device was

22  administered to or used by David, much less that such administration or use is what

23  caused his injury or death and Plaintiff does not allege that David was injured by the

24  administration or use of any drug, product, or device. To the contrary, Plaintiff's

25  claims are based entirely on Defendant's egregious **failures to act**.[2] Moreover, the

26  portion of the Fourth Amended Declaration upon which Defendant relies extends

27

28  [2] *See* ECF Dkt. No. 1-3, Complaint at pg. 4, ¶4; pg.8 ¶¶35-37; pg. 9, ¶38-39; pg. 10 ¶¶ 44-45; pg. 10 ¶47; pg. 11 ¶¶52-57; pg. 13 ¶70.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

immunity to covered persons who have affirmatively decided not to administer a treatment or vaccine to one person in order to prioritize giving said treatment or vaccine to another person, when there is limited supply. That scenario is not present in this lawsuit and therefore the Fourth Amended Declaration does not provide any ground for removal.

This case presents no question of federal law that confers jurisdiction on this Court, and because Defendant cannot be considered a federal officer, Plaintiff respectfully requests that the case be remanded back to state court. This elder abuse and wrongful death case assert only **state law claims** and therefore belongs in Superior Court, like any other elder abuse case arising under the Elder and Dependent Adult Civil Protection Act (Welfare & Inst. C. §15600 *et seq*.)

## II.   <u>BACKGROUND</u>

### A.   <u>Procedural History and Factual Allegations</u>

On December 23, 2020, Plaintiff commenced this action in the Superior Court of the State of California for the County of San Bernardino to seek redress for the preventable death of her sixty-five-year-old brother David Carrillo. (*See* ECF Dkt. No. 1-3, "Complaint" at ¶2). On January 26, 2021, Defendant removed this case to federal court.  (*See* ECF Dkt. No. 1, "Notice of Removal".)

Plaintiff entrusted David, a non-verbal dependent adult with Down Syndrome to the care of VMCC on December 28, 2019 for a temporary stay following a hospitalization. (Complaint at ¶24). However, Plaintiff watched with distress as her brother's condition rapidly declined because Defendant broke that trust by failing to provide adequate care, to implement or follow protective procedures and skiting safety and infection controls. (*Id*. at ¶¶ 3&6).

VMCC has a history of providing sub-standard care. (*Id.* at ¶27). In 2019 (prior to the COVID-19 pandemic), the United States Department of Health and Social Services cited VMCC for at least 30 deficiencies. (*Id*.) Seventeen (17) of the reported deficiencies from 2019 came in the fourth quarter alone (*Id.* at ¶28). Notable <u>pre-</u>

1   pandemic deficiencies that pertain to David's state law violations causes of action

2   include: (i) physically restraining patients when it was not necessary; (ii) failure to

3   timely report allegations of abuse, neglect, exploitation, or mistreatment; and (iii)

4   failure to change visibly soiled gastric tubing for up to seven days.[3](*Id*.) The deficiency

5   involving the gastric tubing, for example, was cited as an "infection prevention and

6   control" deficiency. (*Id*.) Given the VMCC practices that resulted in state law

7   violations pre-COVID-19, it was inevitable that the facility would be ravaged by

8   COVID-19. (*Id*. at ¶29).

9       Prior to entering VMCC, David was physically able to walk on his own,

10  including, walking up and down stairs (*Id*. at ¶33), able to use a fork or spoon to feed

11  himself (*Id*. at ¶40), and was able to use the toilet himself (*Id*. at ¶44).  Unfortunately,

12  David's treatment at VMCC was lacking in care, dignity and respect, which caused his

13  sister and successor-in-interest Cynthia Carrillo ("Cynthia") grave concern. (*Id*. at ¶2).

14      VMCC's neglect and mistreatment of David started in early January, after David

15  had been living at VMCC for two weeks when Cynthia found David on a reclining

16  chair, unresponsive to her. (*Id*. at ¶35). After initially being lied to about whether

17  VMCC staff had given David drugs, staff members confirmed David was given

18  Seroquel without her permission. (*Id*. at ¶¶35-36). Additionally, staff at VMCC often

19  left David in bed or strapped to a wheelchair. (*Id*. at ¶37). Further, David declined to a

20  point where he was unable to use a fork or spoon and was losing weight. (*Id*. at pg. 9

21  ¶¶40&41). After entering VMCC, Cynthia never saw her brother walk again, and was

22  regressing physically and mentally. (*Id.* at ¶¶ 37&39).

23      In early February, Cynthia informed VMCC's staff that there was a rash on

24  David's leg as well as a cut on his ear. (*Id*. at ¶43) She was not given any explanation

25  for how these injuries occurred. (*Id*.) Multiple times Cynthia discovered that David had

26  soiled diapers at VMCC and had to request that staff attend to his soiled diaper. (*Id*. at

27

28  _____
    [3] California Department of Public Health
    (https://www.cdph.ca.gov/Programs/CHCQ/LCP/CalHealthFind/Pages/ASPEN_FEDE
    RAL_2567.aspx?EventID=772R11) (last visited November 13, 2020).

¶44). During Cynthia's visits she also noted that there were few RNs, as opposed to certified nurse's assistants at the facility. (*Id*. at ¶47). Cynthia only saw David's doctor one time. (*Id*.)

On March 30, 2020, she went to visit David through the window. (*Id*. at ¶52). Cynthia noted that David did not look well. Due to COVID-19 restrictions, this was the first time she had seen David in a few weeks, and it looked as though he had regressed even further. (*Id*. at ¶55). David was also wearing someone else's clothes. David, being non-verbal, was unable to protest. (*Id*. at ¶56). On April 6, 2020, David started to develop redness around his groin area, indicating that he was not being changed or being cleaned properly. (*Id*. at ¶58).

At 1:00 AM on April 9, 2020, Cynthia got a call from San Antonio Regional Hospital stating that her brother had been transported there by emergency services. (*Id*. at ¶59). The hospital noted that he was in severe acute respiratory distress. (*Id*.) David was administered a COVID-19 test. (*Id*.) Cynthia's husband, Armando, was able to speak with the emergency room doctor. The Doctor told Armando that David was very sick. On April 10, 2020, the hospital informed Cynthia that David was positive for COVID-19. Cynthia did not learn that her brother's condition was deteriorating from VMCC, as she should have. Instead, she was awoken in the middle of the night with the disturbing news that her brother was already in the hospital's care.  Cynthia had not been told that David was having any breathing problems or fever prior to the surprise phone call from the hospital. (*Id*. at ¶¶60-62).

San Antonio Regional Hospital documented injuries to David's ankle and lower back that had not been disclosed to Cynthia. He had erythema (reddening) to his sacrum and left ankle. In addition to the injuries to David's sacrum and left ankle, David had a cut on his right ear. He had a catheter placed into his penis, which appeared to be significantly swollen and red.

On April 17, 2020, David died from COVID-19. (*Id*. at ¶63). Tragically, staff members at VMCC reported that in the days leading up to his hospitalization, David

1  was not looking well and that multiple staff members had told the head nurse that
2  David needed to see a doctor. The head nurse did not act on those recommendations.
3  (*Id.* at ¶65).

4      Due to David's underlying conditions, he was especially helpless and vulnerable
5  in advocating for himself while under the full-time care of VMCC. (*Id.* at ¶2). The
6  failure to properly care for David, the lack of infectious disease protocols and
7  significant understaffing led to David's untimely death.

8              ## III.    LEGAL STANDARD FOR REMOVAL AND REMAND

9      The right to remove a case to federal court is a creature of statute. *See Libhart v.*
10  *Santa Monica Dairy Co.,* 592 F.2d 1062, 1064 (9th Cir. 1979).  28 U.S.C. § 1441,
11  allows defendants to remove when a case originally filed in state court presents
12  a federal question.  *See* 28 U.S.C. §§ 1441(a), (b); *see also* 28 U.S.C. §§
13  1331, 1332(a). Only state court actions that could originally have been filed in federal
14  court can be removed.  28 U.S.C. § 1441(a); *see Caterpillar Inc. v. Williams*, 482 U.S.
15  386, 392 (1987).

16      The Ninth Circuit strictly construes the removal statute against removal, and
17  consequently the defendant bears the burden of establishing the propriety of the
18  removal. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992); *see also Duncan v.*
19  *Stuetzle*, 76 F.3d 1480, 1485 (9th Cir.1996) (citations and quotations omitted)
20  ("Because of the Congressional purpose to restrict the jurisdiction of the federal courts
21  on removal, the statute is strictly construed, and federal jurisdiction must be rejected if
22  there is any doubt as to the right of removal in the first instance.") Doubts must be
23  resolved in favor of remanding the case to state court. *California v. AbbVie Inc.*, 390
24  F. Supp. 3d 1176, 1180 (N.D. Cal. 2019); *Geographic Expeditions, Inc. v. Estate of*
25  *Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010).

26       "As a general rule, absent diversity jurisdiction, a case will not be removable if
27  the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v.*
28  *Anderson*, 539 U.S. 1, 6 (2003). Generally, "preemption" is an affirmative defense to a

1  state law claim and its assertion by the defendant is insufficient to invoke federal
2  question jurisdiction. *See Marin General Hosp. v. Modesto & Empire Traction*, 581
3  F.3d 941 (9th Cir. 2009); *Caterpillar Inc.*, 482 U.S. at 392–93.

4      Defendant's theory of federal officer removal is inconsistent with the statutory
5  text. That the departing administration endorsed Defendant's theory of an unchanged
6  statute does not constitute a basis for removal that only became ascertainable on
7  January 8. *Cf. Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 140 S.
8  Ct. 789, 790 (2020) (Statement of Gorsuch, J.) ("The law hasn't changed, only an
9  agency's interpretation of it.")"

10  **IV.   DEFENDANT'S EXCLUSIVE FEDERAL QUESTION ARGUMENT**
11  **LACKS MERIT**

12  **A.   Plaintiff's Complaint Does Not Present any Federal Question and**
13  **Therefore This Court Does Not Have Federal Question Jurisdiction**
14  **Under 28 U.S.C. § 1331.**

15      Defendant contends that under the PREP Act, 42 U.S.C. §§ 247d-6d and 247d-
16  6e (2006), Congress has provided immunity for claims, as well as exclusive federal
17  jurisdiction for the allegations and relief sought in Plaintiff's Complaint.

18      The PREP Act authorizes the Secretary of the Department of Health and Human
19  Services to issue a "PREP Act Declaration" in response to a public health emergency
20  that provides immunity from tort claims to "covered persons" involved in the
21  manufacture, distribution, or dispensing of covered countermeasures.[4] 42 USC §
22  247d–6d(b)(1). Covered countermeasures can include vaccines, antidotes, medications,
23  medical devices, or other items used to mitigate a pandemic. 42 U.S.C.A. § 247d-6d
24  (i)(1)(A). Congress recently amended the PREP Act to include personal respiratory
25  protective devices (masks) that are approved by the Federal Food, Drug, and Cosmetic
26  Act or the National Institute for Occupational Safety and Health Act. Lastly, Congress

27
28  [4] (*See* Declaration of Anne Marie Murphy (hereafter "Murphy Decl."), ¶3, Exhibit 2
(U.S. Department of Health & Human Services PREP Act Q&As (Sept. 5, 2019).)
https://www.phe.gov/Preparedness/legal/prepact/Pages/prepqa.aspx#q2.)

1  enacted legislation to provide compensation to people subsequently injured by covered

2  countermeasures. (*See* Murphy Decl., ¶3, **Exhibit 2**.)

3      On March 10, 2020, the Secretary invoked the PREP Act by issuing a

4  Declaration that COVID-19 is a public health emergency and authorizing PREP Act

5  immunity. (*See* Murphy Decl., ¶6, **Exhibit 5**.) In addition to the power to issue a

6  declaration, the Secretary of HHS has the power to amend a PREP declaration by

7  issuing an amended declaration. 42 USC § 247d–6d(b)(4). Furthermore, the Office of

8  the General Counsel of HHS may issue advisory opinions that set forth *its* views of the

9  declaration. (*See* Murphy Decl., ¶7, **Exhibit 6**.) Unlike declarations and amendments,

10  advisory opinions are not a final agency action or a final order, nor do they bind the

11  federal courts, nor have the force or effect of law. (*Id*., at pg. 7; *see also* Murphy Decl.,

12  ¶8, **Exhibit 7**.)  Indeed, the concluding sections of advisory opinions that defendant

13  seeks to rely upon make clear that the force and effect of the opinions is limited.

14      Defendant's argument provides that Section VII of the Fourth Amended

15  Declaration extends liability protection under the PREP Act to Covered Persons for

16  Recommended Activities that are related to Covered Countermeasures and makes

17  explicit that an omission or failure to administer a Covered Countermeasure can fall

18  within the PREP Act's protections. (*See* RJN Ex. 4). However, as detailed below, the

19  allegations in Plaintiff's Complaint do not fall within the Fourth Amended Declaration

20  to the PREP Act and thus remand is appropriate.

21   **B.**   **The PREP Act Does Not Apply and Should not Serve as a Basis for**

22       **Jurisdiction**

23    **1.**   **Defendant is Not Protected by The Fourth Amended**

24         **Declaration**

25      On December 3, 2020, the Secretary issued his Fourth Amendment to

26  Declaration under the PREP Act for Medical Countermeasures Against COVID–19.

27  (*See* RJN Ex. 4). In the weeks preceding the Fourth Amendment, two (2)

28  pharmaceutical companies issued a string of press releases, beginning on November 3,

2020, informing the public that two COVID-19 vaccines were primed for FDA approval and distribution. The Fourth Amendment specifically addresses immunities related to the administration of the imminent vaccinations.[5]

In its introductory section, the Secretary explains the purpose of the Fourth Amendment, in part, is to "make explicit in Section IX that there can be situations where not administering a covered countermeasure to a particular individual can fall within the PREP Act and this Declaration's liability protections." 85 FR 79190, at 79191. At first blush, the language concerning immunity for "not administering a covered countermeasure" seems like broad immunity expansion. However, when Section IX is read in full, it is clear such immunity applies only in a very narrow context that does not pertain to this case. Section IX states:

> **Where there are <u>limited</u> Covered Countermeasures, not administering** a Covered Countermeasure **to one** individual in order to **administer it to another individual can constitute** "relating to . . . the **administration** to . . . an individual" under 42 U.S.C. 247d-6d. For example, consider a situation where **there is only one dose of a COVID-19 vaccine, and a person in a vulnerable population and a person in a less vulnerable population both request it** from a healthcare professional. In that situation, the healthcare professional administers the one dose to the person who is more vulnerable to COVID-19. **In that circumstance, the <u>failure to administer</u> the COVID-19 vaccine to the person in a less-vulnerable population "<u>relat[es] to . . . the administration to</u>" the person in a vulnerable population**. The person in the vulnerable population was able to receive the vaccine only because it was not administered to the person in the less-vulnerable population. **Prioritization or <u>purposeful allocation</u> of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections.**

---

[5] See Patricia L. Luczak, HHS Purports to Expand Civil Immunities Related to COVID-19 Vaccine, Dec. 4, 2020, https://www.whiteandwilliams.com/resources-alerts-HHS-to-Expand-COVID-19-CivilImmunities-Related-to-COVID-19-Vaccine.html (stating: "HHS' action aims to plow potential tort impediments from the path of forthcoming vaccines.")

85 FR 79190, at 79197 (bolding and emphasis added).

A reading of the actual language of the Fourth Amended Declaration, as opposed to the heavily edited and editorialized version presented in Defendant's Notice, makes plain that a covered person will be immune from liability when they intentionally and deliberately, determine to withhold a treatment, vaccine or other covered countermeasure, for the specific reason of purposeful allocation to another person, when such countermeasures are in limited supply.

In this case, there are **no** allegations that any treatment or vaccine was requested by Mr. Carrillo or withheld from him because such treatment or vaccine was in limited supply and was purposefully allocated to another resident. This is not a case where a decision was made that one resident would be given a countermeasure and another resident denied because of limited supply. Rather, this is a lawsuit based on Defendant's failure to act – the failure to provide adequate treatment or care to Mr. Carrillo and the failure to enact any policies and procedures for preventing spread of COVID-19.[6]

Defendant has opportunistically exaggerated language they believe favorable, such as "there can be situations where not administering a covered countermeasure to a particular individual can fall within the PREP Act," and wrongly informed this Court that the instant case is one of those situations. Defendant does not present the Court with the actual language in Section IX because the example provided by the Secretary makes plain that the immunity for the non-administration of a countermeasure in the Fourth Amended Declaration is wholly inapplicable here. Plaintiff's claims do not fall within the defined scope of the PREP Act. If the PREP Act does not apply to the case, it cannot serve as the basis for federal question jurisdiction under 28 U.S.C. § 1331.

/././

/././

---

[6] *See* ECF Dkt. No. 1-3, Complaint at pg. 4, ¶4; pg.8 ¶¶35-37; pg. 9, ¶38-39; pg. 10 ¶¶ 44-45; pg. 10 ¶47; pg. 11 ¶¶52-57; pg. 13 ¶70.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**2.      Plaintiff does not allege claims based on the use of a "Covered Countermeasure" and therefore the PREP Act is not implicated**

To qualify for immunity under the PREP Act, Plaintiff's claims must be related to Defendant's use of a "Covered Countermeasure." The Secretary's March 17, 2020, declaration relative to COVID-19, limited the "Covered Countermeasures" to "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19 or the transmission of SARS-CoV-2 . . . or any device used in the administration of any such product . . . ."  (*See* 85 Fed. Reg. 52, Section VI (Dep't of Health and Human Servs., March 17, 2020).) "Covered countermeasures" are products. They are **tangible things**. They are primarily drugs and the products used to provide those drugs to patients. They are not policies, procedures, protocols, guidelines, or recommendations.

In fact, the Department of Health and Human Services has published a list of all the "countermeasures" covered under the Secretary's Declaration. The list of all of the "therapeutics" included as "covered countermeasures" is attached as **Exhibit 3** to the Murphy Decl. The list of all of the "medical devices" included as "covered countermeasures" is attached as **Exhibit 4** to the Murphy Decl. Of note, all of the items listed in **Exhibits 3 and 4** are drugs or other physical products.  Of further note, there is not a single policy, procedure, protocol, guideline, or recommendation listed. Specifically, "screening employees before allowing them to enter the facility" is not listed as a "covered countermeasure."  "Social distancing" is not listed as a "covered countermeasure." "Discontinuing group activities" is not listed as a "covered countermeasure." Plaintiff's Complaint does not allege the administration or use of a "covered countermeasure." The PREP Act does not apply.

Defendant mentions "countermeasures" in their Notice of Removal but do not and could not point to any allegation in Plaintiff's Complaint that states that the use or failure to use a covered countermeasure caused Mr. Carrillo's death. The allegations against Defendant do not have anything to do with the affirmative use of a drug or

device, much less any of the drugs, devices, and/or vaccines specifically included as "Covered Countermeasures." Nor do the allegations against Defendant involve the affirmative decision not to use such countermeasures due to limited supply. The allegations against Defendant relates to their failure to have, implement, and/or execute an effective infection control program described *supra*. (*See* ECF Dkt. No. 1-3, Complaint at pg. 4, ¶4; pg.8 ¶¶35-37; pg. 9, ¶38-39; pg. 10 ¶¶ 44-45; pg.10 ¶47; pg.11 ¶¶52-57; pg.13 ¶70.)

### 3. Defendant is not a "program planner" nor "qualified person" under the PREP act

Defendant states in the Notice of Removal that they were a "covered person," "program planner," and/or "qualified person" at all times set forth in the Complaint. This is incorrect. A private sector employer or other person can be a program planner **when it carries out prescribed activities**. Plaintiff is not claiming Defendant was administering a covered countermeasure or any prescribed activities. Defendant's interpretation of a Covered Person under the PREP Act would allow for every physician and every senior home facility to seek immunity no matter the specific circumstances of their actions (or here inactions). They do not fall within the definition of "covered person," "program planner," or "qualified person" regarding this lawsuit. *See* 42 U.S.C. § 247d-6d(a)(1), (2)(B), (i)(2), (i)(6), (i)(8).

### 4. The Fourth Amended Declaration Does Not Criticize a Single Federal Decision That Rejected Removal Based on the PREP Act

Prior to the Secretary's Fourth Amended Declaration, there were at least sixteen federal actions wherein nursing home defendants sought removal of state court claims related to COVID-19 based on federal jurisdiction under the PREP Act. <u>All sixteen cases were remanded</u>. Federal judges were unanimous in their opinions that the PREP Act was not intended to shield covered persons from negligence claims unrelated to the administration of covered countermeasures. *See Maglioli v. Andover Subacute*

1  *Rehabilitation Center*, Civ. No. 20-6605, 2020 U.S. Dist. LEXIS 145055 (D. N.J.

2  August 12, 2020); *Gunter v. CCRC OPCO-Freedom Square, LLC*, No: 8:20-cv1546-

3  T-36TGW, 2020 U.S. LEXIS 201622 (M.D. Fla. October 29, 2020); *Sherod v.*

4  *Comprehensive Healthcare Mgmt. Servs. LLC*, 20cv1198, 2020 U.S. Dist. LEXIS

5  191885 (W.D. Pa. October 16, 2020); and *Block, et al. v. Big Blue Healthcare*,

6  2:2020cv02262, 2020 U.S. Dist. LEXIS 150012 (D. Kan. August 19, 2020).

7       All but one of these opinions were decided prior to October 16, 2020 and were

8  available to the Secretary on December 3, 2020. If he believed any of the five different

9  Courts had applied the PREP Act too narrowly as a basis to remand, he could have said

10 so. The fact that the Secretary did take the time to discuss a different federal case,

11 *Grable & Sons Metal Products, Incorporated versus Darue Engineering &*

12 *Manufacturing*, 545 U.S. 308 (2005), in the Fourth Amendment makes it clear the

13 Secretary can include its critique of judicial opinions in its Declarations. *See* 85 FR

14 79190, Section XI, at 79194. The Secretary's lack of inclusion of any recent case

15 denying PREP Act related federal jurisdiction further evidence that Defendant's

16 interpretation, and presentation, of the Fourth Amended Declaration to this Court is

17 simply incorrect. The Fourth Amended Declaration was motivated by the impending

18 distribution of COVID-19 vaccinations and grants immunity only to providers who

19 make a deliberate decision not to administer that vaccine to one patient, because it was

20 administered to another, when such vaccines are in limited supply. There is nothing

21 presented in the Notice that provides this Court with a basis for limited federal

22 jurisdiction. The case should be remanded.

23       ## 5.    The Consensus Among District Courts is Remand

24       The consensus among district courts is in accord with Plaintiff's request to

25 remand.  In a very recent decision that came out of New York entitled *Marc Dupervil,*

26 *as the proposed administrator of the estate of Frederic Dupervil, deceased, v. Alliance*

27 *Health Operations, LLC, dba Linden Center for Nursing and Rehabilitation, John and*

28 *Jane Does, 1-10*, No. 1:20-CV-4042-PKC-PK, 2021 WL 355137, U.S. District Judge

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFF'S MOTION TO REMAND; CASE NO. 5:21-cv-00150 FLA-SP**                    13

1   Pamela K. Chen granted Plaintiff's motion to remand by Memorandum and Order
2   dated February 2, 2021. (RJN Ex. 10 (Order Granting Remand)).

3       The facts in this case are strikingly similar. In the *Dupervil* matter, Plaintiff filed
4   common law claims for negligence and wrongful death after his father contracted
5   COVID-19 and died in the defendant's nursing home. Plaintiff contended, among other
6   things, the failure to take necessary precautions to prevent the spread of COVID-19
7   including failure to enforce social distancing, failure to wear cloth face coverings, and
8   failure to adequately screen for COVID-19.  The defense removed, contending that
9   PREP ACT Immunity mandated removal, and relying on the Fourth Amendment and
10  January 8, 2021 Advisory Opinion from the office of the general counsel. In a
11  comprehensive review of the PREP ACT, the Secretary's declaration regarding the
12  pandemic, all its amendments, and the January 8, 2021 Advisory Opinion, the Court
13  concluded it did not have subject matter jurisdiction over plaintiff's state law claims
14  under 28 U.S.C. sec. 1331, and thus, removal under 28 U.S.C. sec 1441(a) was
15  improper.  The same conclusion is merited here.

16      The court in *Dupervil* also found federal-officer removal improper.  In *Dupervil*,
17  as here, the nursing home argued that it was acting pursuant to the directives of the
18  CDC and CMS which compelled them to respond to the COVID-19 pandemic in a
19  specific way.  The court rejected that these assertions evinced the type of "special
20  relationship" with a federal officer necessary for federal-officer jurisdiction. Rather, it
21  showed defendants were highly regulated private persons or entities complying with
22  federal laws and regulations.  The same conclusion is also merited here.

23      Additionally, the *Dupervil* decision specially references and disagrees with the
24  "tentative" that became the Order in the *Garcia v. Welltower OpCo Grp*., No. 20-CV-
25  2250 (JVS) (KES)); *see also* Dkt. 19-1, at 10–11, which found the Advisory Opinion
26  persuasive and, relying on the Advisory Opinion, concluded that the PREP Act is a
27  complete preemption statute. (RJN Ex. 9 (Order Denying Remand)). The *Dupervil*
28  Court states "[F]or the reasons discussed herein, this Court respectfully disagrees and

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

1   concludes that the Advisory Opinion is unpersuasive and not entitled to any

2   deference." (*See* RJN Ex. 10 at Footnote 2).

3       Further, it bears pointing out, that the *Garcia* decision was mistaken as the Court

4   acknowledged "that as recently as February 2, 2021, a court within this district found

5   that the PREP Act does not provide for complete preemption. *See Fernande Lyons et*

6   *al. v. Cucumber Holdings, LLC*, et al, No. CV2010571JFWJPRX, *2021 WL 364640*

7   *(C.D. Cal. Feb. 3, 2021)*. However, it is not clear from that order if the *Lyons* court

8   even considered the January 8, 2021 Advisory Opinion. See generally, *id*. Therefore,

9   the Court declines to defer to that decision." Upon review of the *Lyons* docket, the

10  Court did consider briefing regarding the Fourth Amended Declaration and January 8,

11  2021 Advisory Opinion yet remanded the case. (*See* RJN Exs. 5-8).

12  **C.    Plaintiff's Complaint Does Not Present any Federal Question and**

13         **Therefore This Court Does Not Have Federal Question Jurisdiction**

14         **Under 28 U.S.C. § 1331**

15      Defendant next argues that there is embedded federal question jurisdiction in

16  Plaintiff's claims. To establish federal jurisdiction due to a "substantial, embedded

17  question of federal law," a "state law claim [must] necessarily raise a stated federal

18  issue, actually disputed and substantial, which a federal forum may entertain without

19  disturbing any congressionally approved balance of federal and state judicial

20  responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg*., 545 U.S.

21  308, 314 (2005). In other words, "federal jurisdiction over a state law claim will lie if a

22  federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4)

23  capable of resolution in federal court without disrupting the federal-state balance

24  approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). If any of the four

25  requirements is not satisfied, the exception does not apply. *Id*. at 315.

26      In addition, "it is not enough that the federal issue be significant to the particular

27  parties in the immediate suit; that will always be true when the state claim 'necessarily

28  raise[s]' a disputed federal issue, as *Grable* separately requires. The substantiality

1    inquiry under *Grable* looks instead to the importance of the issue to the federal system

2    as a whole." *Gunn*, 568 U.S. at 260. "[T]he mere use of a federal statute as a predicate

3    for a state law cause of action does not necessarily transform that cause of action into a

4    federal claim." *Nevada v. Bank of America Corp*., 672 F.3d 661, 675 (9th Cir. 2012).

5    Nor does "the question whether a particular claim arises under federal law depend ...

6    on the novelty of the federal issue." Id. (quoting *Merrell Dow Pharms., Inc. v.*

7    *Thompson*, 478 U.S. 804, 817 (1986)). "A case may not be removed to federal court on

8    the basis of a federal defense, including the defense of preemption, even if the defense

9    is anticipated in the plaintiff's complaint, and even if both parties admit that the

10   defense is the only question truly at issue in the case." *Franchise Tax Bd.,* 463 U.S. at

11   14; *see also Caterpillar*, 482 U.S. at 399 ("[A] defendant cannot, merely by injecting a

12   federal question into an action that asserts what is plainly a state-law claim, transform

13   the action into one arising under federal law, thereby selecting the forum in which the

14   claim shall be litigated. If a defendant could do so, the plaintiff would be master of

15   nothing." (internal citations omitted)).

16        Defendant argues that "Plaintiff's state law claims raise a substantial issue of

17   federal law involving the interpretation and application of the PREP Act." (Removal

18   Papers pg. 12 ¶ 32). But this only shows that Defendant may have an affirmative

19   defense to Plaintiff's claims, not that Plaintiff's claims are affirmatively premised on,

20   or on their face necessarily require resolution via, the PREP Act.

21        Advisory Opinion 21-01 opining that the Secretary's Fourth Amended

22   Declaration supports the *Grable* doctrine is unpersuasive. (*See* Murphy Decl., ¶8,

23   **Exhibit 7** at 4–5 (opining, *inter alia*, that the Secretary's determination that the Act

24   implicates a "substantial" federal question "provides the underlying basis for invoking

25   the Grable doctrine")). The Advisory Opinion's only guidance on the "necessarily

26   raised" factor is a selective (mis)quotation from Grable: "Thus, a substantial federal

27   question is implicated, for example, where 'the interpretation of a federal statute [ ]

28   actually is in dispute in the litigation and is so important that it sensibly belongs in

1   federal court.'" (*Id.* at 4–5 (alteration in original) (quoting *Grable*, 545 U.S. at 315)).

2   The plaintiff in *Grable* "premised its superior title claim [i.e., its well-pleaded state-

3   law claim] on a failure by the IRS to give it adequate notice, as defined by federal

4   law." *Grable*, 545 U.S. at 314–15. The *Grable* Court therefore concluded: "[W]hether

5   Grable was given notice within the meaning of the federal statute is thus an essential

6   element of its quiet title claim[.]" *Id.* at 315.

7       By contrast, the PREP Act, a statute affording immunity, is not an essential

8   element of any of Plaintiff's claims. The Advisory Opinion 21-01 is thus unhelpful. It,

9   moreover, takes the incredible position that once *Grable* is invoked, "the court retains

10  the case to decide whether the immunity and preemption provisions apply; if they do

11  not apply, then the court would try the case as it would a diversity case" (*See* Murphy

12  Decl., ¶8, **Exhibit 7** at 5), presumably even if the parties, as here, are not diverse.

13      In this case, the federal issue raised relates to Defendant's defense, not the

14  claims alleged by Plaintiff. In addition, Defendant has failed to demonstrate how the

15  egregious elder abuse in this particular case raises substantial questions important to

16  "the federal system as a whole," and, instead, they merely argue in conclusory fashion

17  and without any support that "[t]his case involves issues of national importance."

18      **D.   Complete Preemption Does Not Apply to Plaintiff's State Law Claims**

19      According to Defendant, the PREP Act completely pre-empts Plaintiff's state

20  law claims and thereby vests this Court with subject matter jurisdiction, because (they

21  claim) the statute provides them with an affirmative defense to liability for Plaintiff's

22  state law claims. Defendant's Notice of Removal argues that this case comes under a

23  very narrow exception to the "well-pleaded complaint rule" that provides for federal

24  court jurisdiction in cases of "complete preemption." (Removal Papers pg. 8 ¶ 21)

25      Defendant is mistaken because under the well-pleaded complaint rule, only

26  Plaintiff's actual claims (and not the anticipated defenses of a defendant) are

27  considered in determining federal subject matter jurisdiction. To make its argument,

28  Defendant mischaracterizes the allegations in the Complaint to re-cast the Plaintiff's

1    state court claims as claims under the PREP Act. Federal courts are in the best position

2    to interpret federal law and issues of preemption, not Secretary Azar and his legal staff.

3              **1.    Complete Preemption is Moot Because the PREP Act Does Not**

4                         **Apply**

5              The "'well-pleaded complaint rule' provides that federal jurisdiction exists only

6    when a federal question is presented on the face of the plaintiff's properly pleaded

7    complaint." *California ex rel. Lockyer v. Dynegy, Inc*., 375 F.3d 831, 838 (9th Cir.

8    2003) (*quoting Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Complete

9    preemption is an exception to the well-pleaded complaint rule. "[T]he complete

10   preemption doctrine, provides that 'Congress may so completely preempt a particular

11   area that any civil complaint raising this select group of claims is necessarily federal in

12   character.'" *Moore Thomas v. Alaska Airlines, Inc*., 553 F.3d 1241, 1243–44 (9th Cir.

13   2009) (*citing Toumajian v. Frailey*, 135 F.3d 648, 653 (9th Cir. 1998) (*quoting Metro.*

14   *Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987)). Complete preemption is extremely

15   "rare." *Hansen v. Grp. Health Coop*., 902 F.3d 1051, 1057 (9th Cir. 2018).

16             While discussing the limited nature of the doctrine, the Ninth Circuit held that

17   "complete preemption for purposes of federal jurisdiction under Section 1331 exists

18   when Congress: (1) intended to displace a state-law cause of action, and (2) provided a

19   substitute cause of action." *City of Oakland*, 969 F.3d at 906 (*citing Hansen*, 902 F.3d

20   at 1057). Thus, before complete preemption can apply to a plaintiff's state law claims,

21   the "the claims at issue must fall within the scope of the relevant federal statute."

22   *Jackson v. Big Blue Healthcare, Inc*., 2020 WL 4815099, at *3–4 (D. Kan. Aug. 19,

23   2020) (*citing Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 9 n.5 (2003)).

24             In the matter of *Emma Martin et al v. Serrano Post Acute, LLC, et al*., Case No.

25   2:20-cv-05937-DSF-SK, Dkt. No. 18, this Court previously addressed the same issue,

26   stating, "mere immunity against state law or preemption of state law is not the

27   equivalent of complete preemption and does not provide removal jurisdiction." (*See*

28   RJN Exhibit 2 at pg. 3). Because the PREP Act does not apply, the Court need not

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

1    reach the question of preemption. The question of whether the PREP Act completely

2    preempts any state law claims Plaintiff could assert begins with the threshold question

3    of whether the PREP Act even applies to the allegations in Plaintiff's Complaint. If the

4    PREP Act does not apply, the inquiry ends—the question of complete preemption is

5    rendered moot, and remand is required.

6              **2.      Complete Preemption as an Exception to The General Rule**

7                          **Against Federal Question Jurisdiction is Not Implicated in This**

8                          **Case**

9              Even if the PREP Act applied to this case, "[t]he doctrine of *complete*

10   preemption, a narrow exception to [the well-pleaded complaint rule] is not implicated

11   here." *Kehler v. Hood,* 2012 WL 1945952, *5 n.5 (E.D. Mo. 2012)(emphasis in

12   original). By its clear and explicit language, its scope is not "so broad as to **entirely**

13   replace **any** state-law claim." *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint*

14   *Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008)(emphasis

15   added).[7]

16             Although the HHS Secretary's December 3, 2020 Amendment makes clear that

17   an "inaction claim" is not necessarily beyond the scope of the PREP Act, such claims

18   only fall under the scope of the PREP Act where: (1) there are limited covered

19   countermeasures; and (2) there was a failure to administer a covered countermeasure to

20   one individual because it was administered to another individual. 85 Fed. Reg. at

21   79,197 (illustrating a causal relationship between (1) administering and (2) not

22   administering a covered countermeasure where person-A "was able to receive the

23   [single covered countermeasure] only because it was not administered to" person B).

24   Thus, pursuant to the HHS Secretary's December 3, 2020 Amendment, there is only

25   immunity for "inaction claims" when the failure to administer a covered

26   countermeasure to one individual has "a close causal relationship" to the

27   ─────────────────

28   [7] The Advisory Opinion states that the PREP Act only "replaces certain damages
     claims" thereby indicating that it does not replace all such claims. (Murphy Decl.
     Exhibit 7, p. 2 (emphasis added)).

1  administration of that covered countermeasure to another individual. *Anson v. HCP*

2  *Prairie Village KS Opco LLC*, 2021 WL 308156 (D. Kan. Jan. 29, 2021).

3        Though the Advisory Opinion 21-01 holds no significant weight because it is

4  not binding law, it specifically explains that total inaction would not be covered by the

5  PREP Act. That is exactly what happened here.

6        In this case, Plaintiff does not allege that Mr. Carrillo's death was "causally

7  connected" to the administration or use of any covered countermeasure. Instead,

8  Plaintiff alleges precisely the opposite – that it was inaction, rather than action, that

9  caused Decedent's death. Even assuming that Plaintiff's allegations could be construed

10  as alleging the administration of covered countermeasures, they do not allege that

11  Decedent's death resulted from Defendant's decisions to administer those covered

12  countermeasures to other individuals.

13        In addition, even assuming that the PREP Act might arguably provide Defendant

14  immunity on some of Plaintiff's claims, the PREP Act does not satisfy the Ninth

15  Circuit's two-pronged complete preemption test. *City of Oakland*, 969 F.3d at 905. The

16  doctrine of complete preemption applies in very limited circumstances; this is not the

17  "rare" statute where complete preemption applies. *Hansen*, 902 F.3d at 1057.

18        *First*, the PREP Act does not fully replace state law claims related to COVID-

19  19. As many courts have held, the PREP Act does not prevent plaintiffs from bringing

20  state law claims based on an alleged failure to use covered countermeasures. *See, e.g.,*

21  *Estate of Maglioli v. Andover Subacute Rehab. Ctr.* I, 2020 WL 4671091, at *1, *9

22  (D.N.J. Aug. 12, 2020) (holding that the failure to "observe a wide range of

23  appropriate safety precautions" "would not be preempted by the PREP Act, which is

24  designed to protect those who employ countermeasures, not those who decline to

25  employ them"); *Jackson*, 2020 WL 4815099, at *8 (holding the PREP Act does not

26  apply to "the non-administration or non-use of covered countermeasures" and

27  concluding that the PREP Act did not apply to plaintiff's claims because "[d]efendants

28  fail[ed] to point to any claim in the complaint where Plaintiff alleges that the

1    administration or use of any of these things [covered countermeasures] caused the

2    decedent's death"). These cases hold the PREP Act does not "wholly displace" state

3    law claims that implicate healthcare entities and COVID-19. *Beneficial Nat'l Bank*,

4    539 U.S. at 8.

5         *Second*, the PREP Act does not provide a substitute cause of action for

6    Plaintiff's claims. Where applicable, the PREP Act does provide immunity to

7    defendants on state law claims, but "it is now settled law that a case may not be

8    removed to federal court on the basis of a federal defense, including the defense of pre-

9    emption, even if the defense is anticipated in the plaintiff's complaint, and even if both

10   parties concede that the federal defense is the only question truly at issue." *Caterpillar*

11   *Inc. v. Williams*, 482 U.S. 386, 393 (1987). Indeed, state law may be completely

12   preempted only when "it has been replaced by federal law – but this happens because

13   federal law takes over all similar claims, not because there is a preemption defense."

14   *Lehmann v. Brown*, 230 F.3d 916, 919–20 (7th Cir. 2000). Thus, it is correct to

15   conclude, as Honorable Judge Fischer held, that immunity against state law or

16   preemption of state law is not the equivalent of complete preemption and does not

17   provide removal jurisdiction. (*See* RJN 2, at pg. 3)

18   **V.    "FEDERAL OFFICER" REMOVAL IS NOT SUPPORTED**

19        28 USC § 1442(a)(1), authorizes any officer of the United States who is sued in

20   an official or individual capacity, to remove the action to federal court based on the

21   assertion of a federal defense.[8] 28 USC § 1442(a)(1) states that an action against or

22   directed to the following may be removed:

23        (1)The United States or any agency thereof or any officer (or any person acting
24        under that officer) of the United States or of any agency thereof, in an official or
         individual capacity, for or relating to any act under color of such office or on
25        account of any right, title or authority claimed under any Act of Congress for the
         apprehension or punishment of criminals or the collection of the revenue.
26

27   This is an exception to the well-pleaded complaint rule, which typically requires a

28

---

[8] 166 A.L.R. Fed. 297 (Originally published in 2000).

1   federal question to be pleaded in the complaint for the court to have proper subject

2   matter jurisdiction based on a federal question.  *See N.G. v. Downey Reg'l Med. Ctr.*,

3   140 F. Supp. 3d 1036, 1039 (C.D. Cal. 2015).  Removal is appropriate under

4   §1442(a)(1) when the removing defendant establishes that they were acting under the

5   direction of a federal officer when they engaged in the tortious conduct, there is a

6   causal nexus between the plaintiff's claims and the defendant's actions under federal

7   direction, and defendants have raised a colorable defense based upon federal law.

8   *Fidelitad, Inc. v. Insitu, Inc.,* 904 F.3d 1095, 1099 (9th Cir. 2018). Defendant does not

9   satisfy the elements for removal under §1442(a)(1).

10   **A.   <u>Defendant Was not "Acting Under" the Direction of a Federal Officer</u>**

11        "For a private entity to be 'acting under' a federal officer, the private entity must

12   be involved in 'an effort to assist, or to help carry out, the duties or tasks of the federal

13   superior." *Fidelitad, Inc.,* 904 F.3d at 1099 (9th Cir. 2018)(quoting *Goncalves,* 865

14   F.3d at 1245). The "relationship typically involves 'subjection, guidance, or control."

15   *Watson*, 551 U.S. at 151.  *See, e.g.*, *Maryland v. Soper*, 270 U.S. 9, 30 (1926)(a private

16   party acting as a federal officer's driver in a distillery raid had "the same right to the

17   benefit of" the removal provision as the federal agents); *Davis v. South Carolina*, 107

18   U.S. 597, 600 (1883) (a soldier who killed a distiller during a raid could remove his

19   criminal case because he "lawfully assist[ed]" a revenue officer "in the performance of

20   his official duty").

21        In *Panther Brands, LLC v. Indy Racing League, LLC*, 827 F.3d 586, 590 (7th

22   Cir. 2016) the Seventh Circuit puts the early distillery raid cases in context, noting that

23   "[t]here are indeed cases supporting … removal "where the federal government uses a

24   private corporation to achieve an end it would have otherwise used its own agents to

25   complete."" "Merely being subject to federal regulations or performing some functions

26   that the government agency controls is not enough to transform a private entity into a

27   federal officer." *Id.*

28        Here, Defendant insists that it was "acting at the specific direction federal

authorities" to address the COVID-19 pandemic. (Removal Papers pg. 25 ¶ 44.)
However, they fall far short of demonstrating that they were transformed into federal
officers or were standing in the shoes of a federal officers. The arguments are
variations of arguments nursing homes have (unsuccessfully) made before.
Specifically, long-term care facilities (and their owners) accept regulation under
Medicare in exchange for receiving Medicare and Medicaid funds. This theory has
never been enough to satisfy the "acting under" test for "federal officer" jurisdiction.

In *N.G. v. Downey Regional Medical Center*, 140 F. Supp. 3d 1036, 1038 (C.D.
Cal. 2015), the plaintiff filed a negligence claim in state court and the defendant
removed the action to federal court alleging federal officer removal under 28 USC §
1442(a)(1). *Id.* The defendant alleged that it provided healthcare to people who receive
Medicare or Medicaid. *Id.* In rejecting removal, the court noted that if it accepted the
defendant's argument, "every private medical entity providing medical services for . . .
Medicare, or Medicaid recipients would be acting under a federal officer for the
purposes of § 1442(a)(1)." *Id.* at 1040.  The *N.G.* court went on to say that this would
allow "every medical malpractice claim filed against such entities that arises under
state law [to] be removed to federal court." *Id.* The court held that simply complying
with "utilization and professional protocols decided on by federally designated Quality
Improvement Organizations," falls short of establishing that the federal government
directed and controlled the defendant. *Id.* at 1041. The court relied on the United States
Supreme Court's decision in *Watson v. Philip Morris*, 551 U.S. 153, which held that:

> a highly regulated firm cannot find a statutory basis for removal in the fact of
> federal regulation alone. **A private firm's compliance (or noncompliance)
> with federal laws, rules, and regulations does not by itself fall within the
> scope of the statutory phrase "acting under" a federal "official."** And that is
> so even if the regulation is highly detailed and even if the private firm's activities
> are highly supervised and monitored. A contrary determination would expand
> the scope of the statute considerably, potentially bringing within its scope state-
> court actions filed against private firms in many highly regulated industries.

*Watson v. Philip Morris*, 551 U.S. 153

1    Simply complying with the law does not bring a private actor within the scope

2    of the federal officer removal statute. *See Fidelitad, Inc.,* 904 F.3d at 1100 (citing

3    *Watson*, 551 U.S. at 152); *see also Riggs v. Airbus Helicopters, Inc*., 939 F.3d 981, 985

4    (9th Cir. 2019), *cert. denied,* No. 19-1158, 2020 WL 3492671 (U.S. June 29,

5    2020);*Vaccarino v. Aetna, Inc.,* 2018 WL 6249707, at *5 (C.D. Cal. Nov. 29, 2018).

6    Defendant's arguments grossly overreach, suggesting that all nursing home employees

7    have been effectively "deputized" as federal agents.

8    The federal agencies were simply issuing guidelines. Defendant's excerpts from

9    those guidelines omit that CMS' "COVID-19 Long-Term Care Facility Guidance" is

10   "recommended," not mandated. (Murphy Decl., ¶2, **Exhibit 1**.) There is simply no

11   support suggesting that Defendant acted as or under federal agents, and to conclude so

12   here would expand the federal officer statute to unwieldly, undesirable, and

13   unprecedented dimensions.

14      **B.    Defendant did not Establish a Causal Connection Between their**

15           **Actions and Asserted Official Duty**

16   Past cases have interpreted the 'color of office' test to require a showing of

17   'causal connection' between charged conduct and asserted official authority. *Maryland*

18   *(No. 1)*, 270 U.S. at 33. 'It is enough that (petitioners') acts or (their) presence at the

19   place in performance of (their) official duty constitute the basis, though mistaken or

20   false, of the state prosecution.' *Id.* A private party is "acting under" color of the office

21   of a federal agency or official, as basis for federal officer removal of an action, if it is

22   "involved in an effort to assist, or to help carry out, the duties or tasks of the federal

23   superior." *Riggs*, 939 F.3d at 985 (9th Cir. 2019)(quoting *Fidelitad, Inc*., 904 F.3d at

24   1099).

25   Defendant was not following CMS directives with regard to infection control,

26   COVID-19 testing or their use of PPE. *See* ECF Dkt. No. 1-3, Complaint at pg. 4, ¶4;

27   pg.8 ¶¶35-37; pg. 9, ¶38-39; pg.10 ¶¶ 44-45; pg.10 ¶47; pg. 11 ¶¶52-57; pg. 13 ¶70.

28   Defendant failed to implement any of the general guidelines provided, abandoning Mr.

Carrillo in his time of need. Additionally, as discussed above, Defendant's reliance on the Fourth Amended Declaration is inapplicable to the facts of this case. Thus, there does not exist a clear causal nexus between the claims against Defendant and the actions taken by Defendant at the direction of the federal government because they did not take action to follow federal law.

### C. **Defendant did not establish a colorable defense based upon federal law**

Defendant does not meet the final requirement to asserting immunity under the PREP Act as set forth at 42 U.S.C. §§ 247d-6d (a)(1), 247d-6e for the following reasons discussed in depth *infra.* (*See* Section V.C.1-5.)

- Plaintiff's claims do not fall within the scope of the Fourth Amended Declaration of the PREP Act.
- Plaintiff does not allege claims related to a "Recommended Activity" and therefore the PREP Act is not implicated.
- Plaintiff does not allege claims based on the use of a "Covered Countermeasure" and therefore the PREP Act is not implicated.
- Defendant is not a "program planner" nor a "qualified person" under the PREP act.
- The Department of Health & Human Services' Advisory Opinion shows the PREP Act does not apply to this case.

As discussed *infra.*, the PREP Act does not apply, is not a colorable defense based upon federal law, and therefore should not serve as a basis for jurisdiction.

### VI.   **CONCLUSION**

For the reasons discussed above, Plaintiff respectfully requests that this Court remand this case to the Superior Court of California for the County of San Bernardino.

Dated: February 25, 2021          **COTCHETT, PITRE & McCARTHY, LLP**

By:  */s/ Anne Marie Murphy*
ANNE MARIE MURPHY
CARLOS URZUA
KALI V. FOURNIER
*Attorneys for Plaintiffs*

1

## **<u>CERTIFICATE OF SERVICE</u>**

2    I, Anne Marie Murphy, hereby certify that, on February 25, 2021, I

3   electronically filed the foregoing with the Clerk for the United States District Court for

4   the Central District of California using the CM/ECF system, which shall send

5   electronic notification to counsel of record.

6

7                                           By:   */s/ Anne Marie Murphy*

8                                                  ANNE MARIE MURPHY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28